## Elliott, Appellant, v. Wanamaker.

*Construction of oral contract—Province of court and jury.*

The construction of an oral contract is for the jury where there is any doubt about its terms; and where terms are not used in their ordinary sense, and it is shown that by custom or usage they are to be understood in a different sense, it is for the jury to determine what the contract is; but where there is no dispute as to its terms, and no ambiguity which needs explanation, it is for the court to determine the meaning of the contract.

*Master and servant—Discharge of servant.*

So long as an employer is willing to pay an employee his wages, and furnish him the character of work for which he was employed, it makes no difference whether it is all of the employee's work as "assistant buyer" that he is asked to do, or only a part.

Plaintiff was employed by an oral contract as an assistant buyer to the buyer of dress goods for the wholesale department of defendant's business at a salary specified for three years. The year following plaintiff's em

ployment, defendant bought out another wholesale business, and the consolidated wholesale business was conducted in the new establishment. The wholesale dress-goods department was divided into three sections under the general management of a person other than the buyer in defendant's old establishment. Plaintiff was directed to take charge of one of these sections, in which the goods were of the same general character as plaintiff had previously handled. Plaintiff refused to take charge of the section of the dress-goods department to which he was assigned, or to perform any duties in relation thereto, and, without authority from anyone, left the dress-goods department and went to another department, where an entirely distinct class of goods were kept, and performed the duties of an ordinary salesman. He persisted in this course of action for some time, when he was discharged. *Held*, that defendant had a right to discharge plaintiff.

Argued Jan. 12, 1893. Appeal, No. 114, July T., 1892, by plaintiff, James Elliott, from judgment of C. P. No. 4, Phila. Co., March T., 1891, No. 171, on verdict for plaintiff for part of his claim. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Assumpsit to recover salary claimed to be due.

The facts appear by the charge of the court, in part as follows, by ARNOLD, J.:

" Mr. Elliott says that he met Mr. Wanamaker on Friday, the twenty-second day of April, 1887, and concluded an agreement with him on that day; that the agreement was this : ' My brother was to take the flannel department and I was to take the dress-goods department of the wholesale department. I was to be the assistant buyer to Mr. Josiah Bunting, and to move and manage the store ; that is, to move and manage the department at a salary of $6,000 the first year, $6,500 the second year, and $7,500 the third year. I was to be right next to Mr. Bunting he said, for Mr. Bunting was right up to him, and I was to be right next to Mr. Bunting.' That is what the contract was. He was asked this question : ' What part of the dress-goods department of the wholesale department did the conversation relate to? A. It was the whole. All of the department.' [He does not say that the contract was that he was to have the privilege of buying all the goods of that department. His understanding was that the conversation related to the whole or all of the goods of that department.] [8] In pursuance of that contract he said he took charge. . . .

" It appears that about nine months afterwards Mr. Wanamaker saw fit to make some changes in the conduct of his business by buying out the firm of Hood, Bonbright & Co., by consolidating the business of the two stores, and transferring his stock from Thirteenth street to Eleventh and Market streets, and in pursuance of that change Mr. Elliott was moved from Thirteenth street to Eleventh street. [When they got down there, instead of Mr. Bunting being the head of the department, Mr. Andrew C. Sinn was the head of the department, and the department there, being very large, was divided into three parts, one being tendered to Mr. Crawford, one to Mr. Sinn, Jr., and the other to Mr. Elliott, the plaintiff.] [6]

" [As a matter of law, I instruct you that Mr. Wanamaker had a right to make that change. A man is not bound to keep his business within certain confines just to give his employees such particular kind of work as they want to do. Mr. Wanamaker had a right to move to Hood, Bonbright & Co.'s store, and had a right, when he got there, to have other assistant buyers as well as the plaintiff; and if he offered the plaintiff a position as assistant buyer there the plaintiff had no right to refuse it.] [5]

" He says the offer was made to him of this branch of the department on the 14th day of April. ' Mr. Wanamaker sent for me and I went to my brother, and said, " Mr. Wanamaker has sent for me." I was not sure which Mr. Elliott it was, but I thought it was myself, as the messenger came to me, and I said to my brother, " We will go up together." When we went into the office, Colonel Hood was sitting there. We took our seats, and Mr. Wanamaker said to my brother, " Robert, you can have the flannels," and my brother said, " That is perfectly satisfactory, Mr. Wanamaker; all I ask." Q. That was the position he filled ? A. Yes, sir. Colonel Hood was sitting in the office, and, as I have said, Mr. Wanamaker told Robert he could have the flannel department, and Robert said, " That is satisfactory." He said to me, " James, you can have some of the dress goods." I said, " What does that mean ? I would like to see it more clearly defined." He said, " I will call Mr. Sinn ; " and Mr. Sinn was right outside the door, and he called him and he came in, and he said to Mr. Sinn, " You tell James what he can have." Mr. Sinn sat down and said, " James, you

can have the tricots, and sackings, and ladies' dress goods that
are in Parker's department; they are the same character of
goods that you used to keep yourselves when you were in the
business." I said to Mr. Wanamaker, "Am I to buy these
goods and manage the department?" Mr. Wanamaker said,
"Not a piece." I said, "I can tell you here and now that I will
not take any such position."'

"Then again, on page 108, Mr. Robert Elliott testified he
heard James Elliott say: 'Mr. Wanamaker, I can tell you here
and now that I don't propose to take any such position as that
or such a department as that. I can tell you here now that I .
will not accept it, but I stand ready to fulfill my contract to
the letter, and want you to give me my position and I will go in
and fill it to the letter.' That is as near as he can recollect it.

" [If Mr. Wanamaker at that date had seen fit to discharge
Mr. Elliott he had a perfect right to do so, and that right would
continue even after the refusal of Mr. Elliott to take what was
offered to him in the way of buying and managing the whole-
sale dress-goods department, unless it was forgiven or condoned
by Mr. Wanamaker subsequently. Whether the insubordina-
tion was forgiven and overlooked is a matter for you to pass
upon from the testimony.] [7]

"It appears that the plaintiff's salary was paid afterwards,
but Mr. Wanamaker said that he paid it under protest. That
is rather a strange word to be used between superior and infe-
rior; but still, he paid it under protest. He said that he pro-
tested against Mr. Elliott staying in the department he was
not employed to be in. Finally, by letter dated May 25th, Mr.
Wanamaker called attention to the fact that Mr. Elliott was
still working in the department he was not employed to work
in. He said he was willing to continue him in the employment
if he would do what the contract called for, enumerating, to
wit, manage, sell, and buy in the wholesale dress-goods de-
partment. This was a letter calling attention to the fact that
the plaintiff was not doing what the defendants desired him to
do, that is to say, to serve in the wholesale dress-goods depart-
ment, but that he was serving in the flannel department, under
his brother, selling goods; saying to him that the firm was
willing to continue him at his salary, provided he would resume
the duties of his employment in the wholesale dress-goods de-

partment.   Mr. Elliott replied that he was willing to do that, although he said that selling was not what he was employed for; that although he did not contract to sell dress goods, yet he would do it.

" [The real question to determine is, did he do what he said he would.   Suppose you say to a man : ' I will give you so much money if you will walk from here down to the navy yard and back,' and the man says : ' Yes, I will do it ; ' and suppose he does not do it.   He is not entitled to the money.   He has not earned it.   His willingness amounts to nothing unless he does what he agrees to do.] [10] . . . .

" [That brings us back to the question, after all, whether he was still setting up his opinion of what his contract was and refusing to go on in the wholesale dress-goods department, according to the letter of May 25th, or not.   It is nothing for a man to say, ' Yes, I will do a thing,' unless he does it.   It appears by plaintiff's own testimony that he did not.   His excuse is that he was not told to do so, to which the answer is, yes, and you were not told to go into the flannel department.   You have been there for months and months without anybody telling you to be there.   You were asked to go to your proper department.   It is true you said you would go there, but you did not, and therefore we discharge you.] [11]

" [I will submit to you two questions to find from this testimony.   First, is he entitled to the salary which accrued during the three months and twelve days prior to his discharge ?   Has he been a faithful servant, as we say in law, so as to have merited and deserved payment, and therefore be entitled to it ?   If he has, you will give him a verdict for the amount of the back pay which accrued during the last three months and twelve days he was there.] [12]

" [Then comes the question of the pay for the remainder of the year.   If he was insubordinate, if he still persisted, although he said he would go into the proper department, in keeping out of it and keeping in another department to which he was not assigned, Mr. Wanamaker had a right to discharge him, and that ends his salary, and you ought to say so without any fear or favor in the matter.] [13]   You ought to decide the question fairly and honestly upon the testimony without any prejudice or sympathy.   On the other hand, if he was not insubordinate

and he was wrongfully discharged without any reason whatever, then he is entitled to pay for the balance of the year less any amount which he may have earned during that time.

" [Those are the two questions of fact for you to determine from the testimony. First, is he entitled to the wages during the last three months and twelve days he was there. If so, say so by your verdict. Second, is he entitled to the whole or any part of the balance claimed for the remainder of the year?] [14] He would be if he were improperly discharged, and he would not be if he was properly discharged. If he was insubordinate, if he refused to do what he was asked to do, persisted in doing what he was told not to do, and was insubordinate, then he was properly discharged. Mr. Wanamaker was justified in discharging him if he was insubordinate. There must be some head, some government, some rule of law between employers and employees, and it is the employer's right to say what the employee shall do within the scope of the contract. Of course, the employer shall not direct the man to go out and clean the streets or do any menial or inferior work. So long as the employer is willing to pay him his wages and furnish him the character of work for which he was employed, it makes no difference whether it is all of the employee's work that the man is asked to do or only a part. Mr. Elliott had no right to tell Mr. Wanamaker whether he should expand his business or not. Mr. Wanamaker was the sole judge of that. So long as Mr. Elliott was given employment in the line in which he was employed and contracted to work, although it may not have been the whole of it, he was bound to take it and had no right to complain. It is for the employer to say what was to be done and not for the employee. [It appears from the testimony that Mr. Elliott was fidgety and dissatisfied with the change to Eleventh street, and he did for a number of months what he ought not to have done; and if he had been discharged when he said he would not do what he was told to do, to wit, on April 12th, he was properly discharged, and might have been even afterwards, unless Mr. Wanamaker forgave him what he had done. Whether or not he had been forgiven is for you to determine on this testimony.] [15] If Mr. Wanamaker had forgiven him, by keeping him in his employment without ob* jection, or by calling his attention to what the employment

was and asking him to do it and the plaintiff actually did it. [If he did not do what he was asked to do, he was still disobedient, and Mr. Wanamaker's firm had a right to discharge him.] [16] . . .

"If it is your verdict that the plaintiff is entitled to recover his salary for the time he was in the employment of Mr. Wanamaker, that is, to wit, up to June 12, 1889, then the figures, with interest to date, amount to $2,310.60. If in addition to that it is your intention to give him anything for a subsequent time you can add that to it, but if it is not your verdict to give him anything for subsequent time you will render your verdict for this amount. Those are the correct figures, if that be the principle on which your verdict is to be rendered. He is entitled to three months and twelve days, making a total of $1,958.33, with interest to date of $352.27 or $2,310.60."

Verdict and judgment for plaintiff for $2,310.60. Plaintiff appealed.

*Errors assigned* were, (5–8, 10–16) instructions, quoting them.

*Angelo T. Freedley, Richard P. White* with him, for appellant, cited : Wood on Master and Servant, 2d ed., pp. 181, 211, 251; Emery v. Steckel, 126 Pa. 171; McFarland v. Newman, 9 Watts, 55; Sidwell v. Evans, 1 P. & W. 383; Holmes v. Chartiers Oil Co., 138 Pa. 546.

*P. F. Rothermel, Jr.*, for appellee, cited: Bowman v. Bradley, 151 Pa. 351; Short v. Woodward, 13 Gray, 86; Young v. Jeffreys, 4 Dev. & Bat. Law, 216; 1 Wait's Actions and Defences, 114, 115; 1 Chitty on Contracts, 11th Am. ed., 103; Anson on Contracts, 313, 2d Am. ed.; Green v. Watson, 14 N. Y. Sup. 820; Forsyth v. McKinney, 56 Hun, N. Y., 1; Stevens v. Crane, 37 Mo. Ap. 487; Tozer v. Hutchison, 1 Hannay, 548; Dieringer v. Meyer, 42 Wis. 311; Pratt v. Langdon, 12 Allen, 544; Globe Works v. Wright, 106 Mass. 207; Rice v. Dwight Mfg. Co., 2 Cushing, 80; Groat v. Gile, 51 N. Y. 431.

PER CURIAM, January 16, 1893 :

The construction of an oral contract is for the jury where there is any doubt about its terms; and where terms are not

used in their ordinary sense, and it is shown that by custom or usage they are to be understood in a different sense, it is for the jury to determine what the contract is; but when there is no dispute as to its terms, and no ambiguity which needs explanation, it is for the court to determine the meaning of the contract. The province of the jury is to settle disputed questions of fact. If no such disputed facts exist there is nothing for them to do, and it is for the court to determine the legal effect of the contract. In this case there was no dispute as to the terms of the contract. The learned judge below construed it as it was stated by the plaintiff himself. We are of opinion that by the plaintiff's own statement of it the court below was justified in instructing the jury that the defendants had a right to discharge him from their employment, and to direct the jury to find in their favor, except for the amount of plaintiff's salary, with interest thereon, unpaid to him at the time of his discharge on June 12, 1889.

Judgment affirmed.

NOTE.—A suit on this contract, brought in C. P. No. 2, Phila. Co., was nonsuited, and a motion to take off that nonsuit was refused in an opinion by FELL, J., 48 Leg. Int. 56; s. c. 9 Pa. C. C. R. 497.