Gravatt *v.* State Workmen's Insurance Fund et al.,
Appellants.

Argued April 11, 1940.

Before KELLER,
P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER,
RHODES and HIRT, JJ.

436

*S. H. Torchia,* with him *Ralph H. Behney* and *Claude T. Reno,* Attorney General, for appellants.

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellee.

OPINION BY STADTFELD, J., June 25, 1940:

This is an appeal by the State Workmen's Insurance Fund from the decree of the Court of Common Pleas of Allegheny County, affirming an award for compensation to the claimant made by the referee and the Workmen's Compensation Board against the employer and its insurance carrier.

The claimant, Jesse H. Gravatt, while making repairs to a trestle on the premises of the Butler Junction Coal & Coke Company, defendant, on September 27, 1937, sustained injuries resulting in the industrial loss of use of his left eye. A claim petition was filed, and after a hearing, the referee on February 15, 1939, found as a fact that the claimant was an employe of the defendant company and concluded as a matter of law that he was entitled to compensation for the resulting loss. An award was therefore entered for the period of 125 weeks in the total sum of $1,875 for the loss of vision of the left eye, against the defendant company and the State Workmen's Insurance Fund.

Appellant contends that the claimant at the time of the injury was not an employe of the defendant company within the meaning of the Workmen's Compensation Act. It is contended that the claimant was an independent contractor.

The Workmen's Compensation Act of June 2, 1915, P. L. 736, Sections 103 and 104 (77 PS §§ 21, 22) declares the terms "employer" and "employe" as they are used, to be synonymous with those of "master" and "servant". The relation of master and servant exists where the employer has the right to select the employe, the power to remove and discharge him, and the right to direct both what work shall be done, and the way and the manner in which it shall be done: *McColligan v. Penna. R. R. Co.*, 214 Pa. 229, 232, 63 A. 792. On the other hand, where the contract is let for work to be done by another in which the contractee reserves no control over the means of its accomplishment, but merely as to the result, the employment is an independent one establishing the relation of contractee and contractor and not that of master and servant: *Simonton v. Morton*, 275 Pa. 562, 119 A. 732. A control of the work reserved in the employer which makes the employe a mere servant is a control not only of the result of the work, but also of the means and manner of the performance thereof: *Balinski et ux. v. Press Publishing Co. et al.*, 118 Pa. Superior Ct. 89, 179 A. 897.

In order to determine the relationship between the claimant and the defendant company, an examination of the testimony is required. The claimant testified that on or about September 1, 1937, he was employed to repair a trestle that held a coal conveyor. He was a carpenter by trade and did work for other people. At the time, his understanding was that this was all the work that was to be done by him. In the doing of this work, he hired his two brothers, his father, and four other men. The company also let him have some of its own men. He kept their time, kept track of their wages, and once a month sent to the company a payroll sheet. He paid the men who worked on this job out of his own money. He carried workmen's compensation insurance to cover these men. The policy was taken out in his own name. He, himself, was not

covered under this policy. It was taken out in July of 1937, and a premium of $67 was paid by the claimant. He further testified that the company reimbursed him for the premium covering the men working at the time of the injury.

He had the right to hire and fire the men who worked for him. He set his own hourly rate at $1.00 and those of his men at 90¢. The company agreed to pay him $1.00 per hour. At the end of the month, the company would pay the claimant what moneys were due in one lump sum, based on the payroll sheets submitted. As to control, the claimant testified that he was not told exactly how to do the work, but merely what to do while the work was in progress. At the time he was employed to repair the trestle, he was not asked to do anything else, although later he was given several jobs of repairing roofs on buildings owned by the defendant company.

E. A. Watters, general superintendent of the defendant company, who made the arrangements with the claimant, was much more specific as to the provisions of the oral contract. He testified that he met the claimant sometime in the last week of August or the first week of September at the tipple. He had the claimant look it over with the idea of giving an estimate of the cost, and as it was impossible to do so, claimant volunteered to take the job on a cost-plus basis. The claimant agreed to be covered by compensation insurance and stated he would charge 10¢ per hour more than he would pay the men, and out of this 10¢ he would pay the compensation insurance and consider the rest as profit. On the basis of this understanding, the entire job was actually completed, even after the claimant was injured and unable to work, for which the defendant company paid to the claimant $842.34. This sum was based on the payroll record submitted by the claimant which disclosed the number of employes, their

names, and the amounts agreed that they should receive per hour.

Mr. Watters further testified that the claimant hired every man who worked for him and the company had nothing to do with the job, except to pay the sums indicated on the payroll sheet. The claimant had done work previously, and had, for approximately ten years before carried compensation insurance covering the men who worked for him. This witness further testified that the work of repairing the tipple was not in the usual course of defendant's business; that this particular work had not been done for ten years; and that it was not part of the usual and ordinary work done by the defendant company. The company did not have a regularly employed carpenter to do this work, but it was their custom to let it out on contract.

At the time of the injury, the claimant asked Mr. Watters if there was not some way for him to put the claimant on the payroll, since his own insurance carrier had declined to pay him. Mr. Watters declined this request. Stewart Ray Sherbondy testified that he was foreman for the defendant company; that he had no right to hire or fire any of the men working for the claimant, nor did he have the right to control the manner in which the work was being done. He further testified that his son was one of the men working for the claimant and that the son's hourly rate was listed at 60¢ an hour, but that when he received his check, it was based on an hourly rate of 50¢, which corroborates the testimony of Mr. Watters that claimant was to charge 10¢ more per hour for the men who worked for him.

The claimant was recalled and the following testimony corroborates the nature of the contract between the defendant company and himself, as testified to by Mr. Watters: "Q. You made the payroll didn't you? A. I had no reason to list 10¢ more. There are some men that got it. Q. If you listed 60¢ an hour, they got

60¢ an hour?  A. No, I didn't pay them quite 60¢ an hour.  Q. How do you account for that?  A. I charged enough extra to make up for the compensation."

From the above recited testimony, taking the most reasonable view and resolving all inferences in claimant's favor, we can only come to one conclusion, and that is, that claimant contracted to do a certain job; to employ his own men; cover them by insurance; retain the right to hire and fire them; control the manner in which the work was to be done; pay all of them out of his own money; and at the end of the month, charge the company with so much per hour for the men employed, which price included, what claimant himself admits, sufficient to pay the compensation insurance necessary to cover the men.  If there was any control exercised by defendant company, it was only such as to insure the proper execution and compliance of the terms of the oral agreement.  Since the nature of the work was such that the various steps to be taken could not be anticipated, it follows naturally that the company would have the right from time to time to tell the claimant what was to be done.  The company, however, did not have the right to tell the claimant how the work was to be done.  Every factor, therefore, indicates the relationship of independent contractor rather than one of master and servant.

The fact that the claimant was required to carry compensation insurance, which he admitted covered the men who were working for him, is some evidence that he was an employer and an independent contractor rather than an employe of the defendant company.

In *Colleoni v. Delaware & Hudson Co. et al.*, 274 Pa. 319, 118 A. 248, one Fidati was obliged to furnish the workmen necessary to carry out his agreement, fix their wages, report their time to the company, and to pay those engaged in the work the amount due each and charge such payments against the contract.  The mine owner, under the contract, furnished the equipment,

including mules, cars, timber and track material, reserving, however, the right to cancel the contract on five days' notice, but retaining no control over the workmen or over the manner of doing the work, except such as might be inferred from the stipulation providing the work should be "according to the directions of the mine foreman". It was held that Fidati was an independent contractor and the "directions" of the foreman might be reasonably construed as giving the foreman power merely to direct the result of the work and see that the contract be faithfully performed and not to direct the manner of its performance. In the instant case, it was admitted by the claimant that he was not told how to do the work, but rather what to do and it was testified to by the general superintendent that he had no control over the manner in which the work was done.

In *Simonton v. Morton*, supra, the agreement provided that designs and color of advertisements should be provided by the defendant. Pictures of completed signs were to be forwarded to him before payment and the approval of the advertiser was to be first obtained. A weekly report was to be furnished to defendant of the work done. The defendant had the right to direct where the work was to be done, and when a change of design was to be painted, it should be done only when directed by the defendant. The defendant was to furnish materials. With regard to this control, the court stated, pp. 569, 570: "There necessarily must be a certain control by the contractee of all undertakings such as the one we are considering, otherwise he could not safeguard himself as to the satisfactory accomplishment of the work. 'As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control—at least to enable him to see that the contract is performed according to the specifications. The employer may exercise a limited control over the work without rendering the employee a mere

servant, for the relation of master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract. The control of the work reserved in the employer which makes the employee a mere servant is a control, not only of the result of the work, but also of the means and manner of the performance thereof: 14 Ruling Case Law 68. A reservation of the right to supervise and inspect the work during performance does not make the contractor a mere servant, where the mode and means of performance are within his control: 14 Ruling Case Law 69.

"In the case in hand, it is conceded that the contractor employed, paid and had full power to control the workmen. This is one of the most important considerations in construing the contract to determine the relation of the parties. 'The control of the workmen doing the actual manual labor in the performance of the work is an extremely important element in determining whether the employee is an independent contractor. The fact that the contractor employs, pays, and has full power to control the workmen is practically decisive of his independence': 14 Ruling Case Law 71."

After a careful consideration of the entire testimony, we are of the opinion that the claimant cannot, under the most liberal construction, be considered an employe. Everything shows conclusively that claimant was an independent contractor.

The assignment of error is sustained, the judgment of the court below is reversed, and judgment is now entered for the defendant.