## Thomas *v.* Bache et al., Appellants.

Argued March 8, 1944. Before KELLER, P. J., BALD-

RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Ben R. Jones, Jr.,* with him *Stanley B. Jones* and *Bedford, Waller, Jones & Darling,* for appellants.

*Thomas M. Lewis,* with him *Henry Greenwald,* for appellee.

OPINION BY KELLER, P. J., July 15, 1944:

This workmen's compensation case arose out of the same accident involved in *Cease v. Thomas, Executrix, et al.,* 155 Pa. Superior Ct. 215, 38, A. 2d 547, decided this day, in which we upheld the Workmen's Compensation Board and the Court of Common Pleas of Luzerne County in holding that Alfred R. Cease was an employee of James E. Thomas at the time of the collapse of the scaffold, on which both were standing while at work reshingling the roof of Carter Bache's grocery store building, resulting in the serious injury of Cease and the death of Thomas.

Thomas's widow filed a claim petition alleging that her husband was an employee of Bache at the time the scaffold collapsed.

Indemnity Insurance Company of North America, insurance carrier for Bache, filed an answer, on his behalf,

denying liability on two grounds: (1) That the deceased was not an employee of Bache's, nor an employee within the meaning of the Workmen's Compensation Act. (2) Because the employment, if there was any, was casual in character and not in the regular course of Bache's business.

The claim (No. 86,378) was assigned to the same referee who heard the claim of Cease v. Thomas (No. 88,777).

The first hearing of the referee in the present case was held on November 14, 1940, before any hearing in Cease v. Thomas; but the testimony was not closed until Sept. 1, 1942, nor was the referee's decision disallowing compensation filed until November 10, 1942, a year after the testimony closed in the Cease case and fourteen months after the filing of the decision of the referee finding that Cease was an employee of Thomas and allowing compensation.

The referee sustained the defendants on both grounds, holding that the work on which Thomas was engaged at the time of his death was casual in character and not in the usual course of Bache's business, and that Thomas was not an employee of Bache but an independent contractor.

Mrs. Thomas appealed to the Board, which reversed the findings of the referee on both grounds and awarded compensation.

On appeal to the common pleas, the court dismissed the appeal and affirmed the action of the board, and entered judgment accordingly against the defendant, Bache, and his insurance carrier. They took separate appeals to this court.

The legal question as to the competency of Bache to testify does not arise in this case, for he was called as a witness by the claimant, as for cross-examination, and thereby was made a fully competent witness for both sides (Act of May 23, 1887, P. L. 158, section 6); and

being called by the claimant as under cross-examination, his testimony, unless it is contradicted by other evidence, is to be accepted as true (*Dunmore v. Padden,* 262 Pa. 436, 105 A. 559; *James v. Shapiro,* 135 Pa. Super. Ct. 550, 5 A. 2d 815).

The parties presented at the hearing before the referee an agreed stipulation of facts of record, of which the following are material to the issue before us:

That James Thomas died on June 26, 1940 as a result of an injury by an accident sustained on June 25, 1940 while engaged in reshingling the roof of a store located at 78 West Broad Street, Nanticoke, Pa., owned by the defendant, Carter Bache ......

That the injury resulting in the death of the decedent occurred when the scaffold upon which he was working on the said defendant's premises fell to the ground bringing the decedent with it and causing him severe head injuries from which he died some twelve hours later in the Nanticoke State Hospital ......

That the defendant, Carter Bache, was the owner and operator of a large retail grocery and meat store in the City of Nanticoke and a branch store in the Village of Alden, of eleven farms [operated together] with approximately fifty buildings thereon, and several pieces of improved real estate in the City of Nanticoke, including three apartment buildings, a double frame dwelling (two family dwelling) and two single dwellings, which later developed pieces were occupied by tenants who paid or should pay rent.

That the decedent was a carpenter by trade.

That the decedent was engaged by the defendant, Carter Bache, to reshingle the roof on the said business place at 78 West Broad Street, Nanticoke [the defendant's grocery and meat store above mentioned] at the time of the said injury.

That upon occasions during several years preceding the accident the defendant had Mr. Thomas do certain

carpentry work in and about the properties which the defendant owned and that on some of those occasions if the work required it Mr. Thomas had the aid of other carpenters whom he, Mr. Thomas, hired.

That the work of Mr. Thomas for Mr. Bache was not exclusive nor was it consecutive. By exclusive is specifically meant that Mr. Thomas worked for others and that he did not work for Mr. Bache solely.

That the decedent worked for the defendant intermittently for the last three or four years in the performance of all of the work in his line, that is Mr. Thomas's line, that the business and properties of Mr. Bache in Nanticoke required. Further, what work in his line that the farmers on the farms mentioned could not do, Mr. Thomas did. Generally over this period of time the services of Mr. Thomas were required once or twice a year on the farms.

That during the relationship on various occasions between the defendant and the decedent all materials were purchased either directly by the defendant or by Mr. Thomas, the decedent, and in the latter event charged to the defendant by the seller of the materials.

That the job started approximately two weeks before the day of the accident [but there had been only four days work done on it before June 25].

The referee who heard the case made the following findings of fact material to this issue:

1. On June 25, 1940 the decedent, James Thomas, sustained an accidental injury while reshingling the roof of the retail grocery and meat shop owned by the defendant, Carter Bache. The decedent died as a result of the injuries on June 26, 1940 ......

6. The defendant was the owner of the retail grocery and meat store on which the decedent was working. The defendant also had a branch grocery and meat store at Alden, Penna. The defendant also owns 11 farms on which there are approximately 50 buildings

of various types. At Nanticoke, Penna. the defendant owns several improved pieces of real estate consisting of three apartments.

7. Decedent was a carpenter and a building contractor. He was also employed by the City of Nanticoke as building inspector.

8. About a year prior to June 25, 1940 the decedent built a home for a third party on a contract basis. At the time the decedent was working on the defendant's property he was also doing some work on a property of the Shriner Estate.

9. The decedent hired 4 men to work with him on the job of reshingling the defendant's roof. One of these men was hired by the decedent at the direction of the defendant. These men were paid [for] each day by the defendant at the rate of $7 per day. Their time was turned in to the defendant by the decedent.

10. On June 14, 1940 the decedent sent Alfred Cease, one of the four men who was working under him on the defendant's building, to do a half day's work on the Shriner Estate property.

11. For several years prior to June, 1940 the decedent performed carpenter work for the defendant on various properties of the defendant. On some occasions the decedent hired other workers to assist him in such work. During this period of years the decedent also did work for others. In the performance of this work by the decedent for the defendant, the necessary materials were ordered by the decedent and charged to the defendant. The defendant paid for these materials.

12. The materials necessary for the reshingling of the defendant's roof in June, 1940 were ordered by the decedent and charged to the defendant. The defendant paid for these materials.

13. The decedent and the defendant did not expressly agree as to the amount which the decedent was to receive for his work. On the last occasion which the de-

cedent had done work for the defendant prior to this job in June, 1940, the defendant paid the decedent at the rate of 87½ cts. per hour for the time which the decedent worked.

14. We find as a fact that the defendant was not engaged in the construction of buildings.

15. The work done by the decedent and four men who worked with him was directed entirely by the decedent who also supplied the equipment with which the work was done.

16. The job of reshingling the defendant's roof was begun about two weeks prior to June 25, 1940.

17. We find as a fact that the decedent was not employed by the defendant but was engaged by the defendant as an independent contractor.

18. We find as a fact that the work being performed by the decedent for the defendant was casual and not in the regular course of business of defendant.

The board affirmed all of the findings of fact of the referee except the 9th, 14th, 15th, 17th and 18th, which it set aside, and substituted instead the following:

9. The decedent had four men working with him reshingling the defendant's roof. One of these men, Hayden Davis, was employed at the express direction of the defendant; another, Albert Cease was employed with the permission of the defendant and a third was a regular employee in the meat and grocery store of the defendant. These men were paid by the defendant at the rate of $7 per day, the time for the men being turned in to the defendant by the decedent.

14. In addition to conducting a retail meat and grocery business, defendant was engaged in the real estate business operating three apartment houses containing 13 apartments.

15. For a period of approximately six years prior to June 1940 decedent had done all of the carpentry work required on any of the buildings owned by the defendant.

232

16. While the work done by the decedent was not directed by the defendant, the defendant had the right to control all of the work performed by the decedent for him.

17. The relationship between the decedent and defendant was that of employer-employee.

18. The work being performed by the decedent for the defendant was not casual and was in the regular course of the defendant's business.

There is no disagreement or dispute in the testimony as to the material basic facts in the case. Hence, the question as to the relationship between Bache and Thomas, whether Thomas was an employee of Bache, or an independent contractor, in reshingling the roof of Bache's store building, is not really one of fact, but of law, (*Campagna v. Ziskind,* 287 Pa. 403, 408, 135 A. 124; *Elliott v. Wanamaker,* 155 Pa. 67, 25 A. 826; *Koch v. Matter,* 307 Pa. 337, 161 A. 309; *Tyler v. Mac. Fadden Newspapers Corp.,* 107 Pa. Superior Ct. 166, 163 A. 79; *Joseph v. United Workers Assn.,* 343 Pa. 636, 23 A. 2d 470; *McGrath v. Edw. G. Budd Mfg. Co.,* 348 Pa. 619, 622, 36 A. 2d 303; *Healey v. Carey, Baxter & Kennedy,* 144 Pa. Superior Ct. 500, 19 A. 2d 852) and is therefore subject to review and revision by the court, whose duty it is to declare the legal effect of the facts in evidence. Hence the seventeenth finding of fact will be treated as a conclusion of law.

The burden of proving that James Thomas was an employee of Carter Bache was on the claimant: *Sechrist v. Kurtz Bros.,* 147 Pa. Superior Ct. 214, 216, 24 A. 2d 128. The burden was not on the defendant to disprove it.

We feel obliged, at the outset, to state that the referee and the board were bound by the stipulation of facts agreed upon by the parties and filed of record at the first hearing. The compensation authorities were not at liberty to make findings contrary to, or contradictory

of, the stipulated facts, because a witness, perhaps from a mistaken recollection, may have testified somewhat differently from the facts as agreed upon of record. Any finding of fact which is opposed to the facts as stipulated will be disregarded. Parties in workmen's compensation cases, as in all other civil proceedings, may enter of record a binding stipulation as to the facts of the case: *Com. ex rel. v. Banholzer,* 304 Pa. 578, 156 A. 237. It conclusively relieves them of the necessity of countervailing proof. This fundamental principle was not observed by the board. Some of the board's substituted findings were opposed to the facts stipulated of record. Others of them were unsupported by any evidence in the record, and for that reason cannot stand as findings.

(1) There is no evidence in the record to support the statement in the board's 9th finding of fact, concerning the four men hired by Thomas to help him reshingle Bache's roof—which, in this respect, followed the referee's 9th finding—to wit, "These men were paid by the defendant at the rate of $7.00 per day, *the time for the men being turned in to the defendant* [Bache] by the decedent [Thomas]." The testimony (not only of Bache, but also of the men who testified) shows that the only men who had been paid by Bache for work on this job prior to the accident were Albert Cease and Hayden Davis, each of whom had been paid by Bache at the end of the preceding week, $14 for two days' work. It shows that these two men had been told by Thomas to present their bill to Bache and to tell him (Bache) that he (Thomas) had told them to get their money from him (Bache); and that Bache had paid them the amount they told him was coming to them for their work. In other words, Bache knew them personally and relied on their word.[1] No "time" or record of their

---

[1] Bache testified (30a): "Like on this job, these gentlemen [Cease and Davis] came in, I didn't have any arrangements how

work had been turned in by Thomas to Bache. Of these four men, Mr. Bache had asked Thomas to hire Davis. He *knew* of Thomas' hiring of Cease. He did not know who the other two were previous to their coming to work. Milo Lewis was one, and a boy named Clapps, who worked or had worked, in Bache's store was the other. These two were not carpenters, but laborers, and there is no testimony in the record what wages they were to be paid. Mr. Bache had not hired any of them, nor did he ask any of them to work on the job, and he testified that he did not know how much they were to be paid. There is no testimony in the record to support a different finding.

(2) The evidence supported the referee's 14th finding of fact—that the defendant, Bache, was not engaged in the construction of buildings. There is no evidence in the record to support the finding in the board's substituted 14th finding that "defendant was [also] engaged in the real estate business operating three apartment houses containing [together] 13 apartments." When asked his business, Mr. Bache testified that he was a farmer and a grocer, and that he was not in the real estate business. He had bought some real estate but had never sold any. His ownership and operation of three small "apartment houses" containing together 13 apartments, located in the same block with his store building did not put him into the real estate business; and, besides, the work being done at the time of the accident was putting a new roof on his *grocery store* building.

(3) The board vacated and set aside the referee's 15th finding of fact: "The work done by the decedent and four men who worked with him was directed entirely by the decedent [Thomas] who also supplied the equipment with which the work was done." The evi-

---

they were to be paid or how much they were to get or anything; they came in and asked me for $14, and I gave it to them."

dence supports that finding and will not support any other contrary to it. It shows that Thomas alone directed the work of reshingling the roof and supplied the scaffold (jacks and planks) and erected it. His control over the men is shown by his taking Cease off the Bache job—without the latter's knowledge—for half a day and sending him to work on another job that he (Thomas) was doing for the Shriner Estate at the same time. The board's substituted 15th finding is contrary to the stipulated facts as to the length of time Thomas had been doing work for Bache.[2]

(4) The board's 16th finding of fact is not supported by the testimony and is contrary to the evidence of Mr. Bache, testifying as under cross-examination and not contradicted. See *Dunmore v. Padden,* supra, and *James v. Shapiro,* supra.

The picture obtained from the stipulated facts of record, the findings of fact of the referee not vacated or set aside, and the testimony of Mr. Bache, called by the claimant as under cross-examination and not contradicted by other witnesses, is as follows:

In June 1940 Carter Bache was the owner and operator of a large grocery and meat store in the City of Nanticoke, of eleven farms, operated together as Maywood Farms, and three apartment buildings, containing together 13 apartments, located in the same block (Broad & Hanover Streets) with his store building. He also owned a double family frame dwelling and two single family dwellings.

James Thomas was a carpenter by trade, and a con-

---

[2] The stipulation agreed: "That the work of Mr. Thomas for Mr. Bache was not exclusive nor was it consecutive ...... That the decedent worked for the defendant intermittently for the last three or four years in the performance of all the work in his [Thomas's] line that the business and properties of Mr. Bache required." His services at the farms "were required once or twice a year."

tractor and builder, in the City of Nanticoke. He was also the City Building Inspector.

Upon occasions during the three or four years previous to 1940, Mr. Bache had Mr. Thomas do carpentry work in and about the properties which he owned, and on occasions, when the work required it, Mr. Thomas hired other carpenters to assist him in doing the work. Mr. Thomas' work for Mr. Bache was not exclusive nor consecutive. He also worked for other people, and, within a year of 1940, had built at least one house for a third party on a contract basis. He was building a new porch on a house for the Shriner Estate in June 1940 at the same time he was doing the work for Mr. Bache on his store building hereafter referred to. He also attended to his official duties as city building inspector. Once or twice a year Mr. Thomas was called on to do work on Mr. Bache's farms, which the farmers could not do.

In June 1940 Mr. Bache told Mr. Thomas he wanted a new shingle roof put on his store building. There were two layers of shingles on the roof—first wooden shingles, then asphalt shingles. Both had to be taken off and new wooden shingles put on. Bache told Thomas that he (Bache) would buy the shingles. He did not tell Mr. Thomas how many men the latter was to employ, or who they were—except that he wanted Hayden Davis to work on the job—or how the work was to be done or what wages he was to pay. His only instructions were that he wanted a new shingle roof put on. Nothing was said about prices or wages.

Mr. Thomas had worked intermittently for Mr. Bache for three or four years previously and attended to whatever work in his (Thomas') line Bache required for his business and properties in Nanticoke. He sent Mr. Bache a bill for his work and services from time to time. He had not sent him a bill for over a year prior to June 1940. When he worked for Bache as a carpenter,

just by himself, Bache paid him 87½ cents an hour for the time he, worked. Bache never asked Thomas how much he would charge him for a job—Thomas would bill him and he (Bache) would pay him— Thomas' last bill was in Bache's possession and was itemized. Nobody asked him to produce it. When Thomas hired other men to work with him on Bache's job, the latter "mostly paid the men" himself. They came to him, told him what their bill was, and he paid it. Thomas carried workmen's compensation insurance for the men whom he hired to work on Bache's jobs. Bache carried no workmen's compensation insurance for Thomas or the men hired by him, nor did he pay social security taxes for any of them.

Thomas began work on reshingling Bache's store building roof during the week of June 10. He hired three men, Hayden Davis, Alfred Cease, Milo Lewis and a boy named Clapps. Davis was the only one that Bache had asked him to give a job to. The scaffold needed for the work, steel jacks and planks, was Thomas's, and he erected it. Bache had nothing to do with it. Thomas had full control of the men and directed them what they should do. He, himself, worked with them part of the time. One day he ordered Cease off the Bache job and sent him to the Shriner Estate house to do half a day's work on a job Thomas had there, which he was carrying on at the same time. Bache knew nothing about this and was not consulted with regard to it. The weather was unfavorable and only four days work had been done on the roof prior to June 25. In the interim Davis and Cease had gone to Mr. Bache and each had collected $14 from him for 2 days work during the first week. They told him Thomas had told them to go to Bache for the money and tell him that he (Thomas) had sent them. Bache paid them. Nothing was said by Thomas to Bache about his own pay, or payment for the use of the scaffold

238

and equipment belonging to the former, or what, if anything he would be paid for directing his employees.

On the morning of June 25, 1940, while Thomas, Cease, and Davis were on the scaffold, it collapsed, throwing all three to the ground and injuring them severely. Thomas died the next day from his injuries. Lewis was also hurt, but apparently while he was on the ground. An insurance company which carried Mr. Bache's *liability* insurance made settlement, on his behalf, with Cease, Davis and Lewis for any claims for damages they might have against him growing out of the fall of the scaffold. These settlements did not purport to cover or include workmen's compensation claims. There was no tort liability resting on Bache, (*Langdon v. Lawrence Park Realty Co.*, 254 Pa. 86, 98 A. 777) and the payments by the carrier of his liability insurance had no effect on his liability or non-liability for workmen's compensation insurance. See *Cease v. Thomas*, supra.

On this statement of facts, we are of opinion, as matter of law, that the relation of Thomas to Bache was that of independent contractor and not employee, and that the latter and his insurance carrier are not liable to pay workmen's compensation to Thomas's widow. The undisputed material facts bring the case within the following decisions of the Supreme and Superior Courts, which held that an independent contractor relation existed, (rather than those relied on by the board, the court below and the claimant), to wit, *Smith v. State Workmen's Ins. Fund,* 262 Pa. 286, 291, 105 A. 90; *Simonton v. Morton,* 275 Pa. 562, 569, 119 A. 732; *Brooks v. Buckley & Banks,* 291 Pa. 1, 139 A. 379; *Persing v. Citizens Traction Co.,* 294 Pa. 230, 144 A. 97; *Long v. Eastern Paving Co.,* 295 Pa. 163, 145 A. 71; *Koch v. Matter,* 307 Pa. 337, 161 A. 309; *Sechrist v. Kurtz Bros.,* 147 Pa. Superior Ct. 214, 24 A. 2d 128; *Bradley v. Chester Materials Co.,* 151 Pa. Superior Ct.

485, 30 A. 2d 206; *Healey v. Carey, Baxter & Kennedy,* 144 Pa. Superior Ct. 500, 19 A. 2d 852; *Gravatt v. State W. I. Fund,* 140 Pa. Superior Ct. 435, 14 A. 2d 143; *Phipps v. Greensboro Gas Co.,* 109 Pa. Superior Ct. 382, 167 A. 461; *Tyler v. MacFadden Newspr. Corp.,* 107 Pa. Superior Ct. 166, 173, 163 A. 79; *Holbrook v. Wilkes-Barre,* 105 Pa. Superior Ct. 250, 161 A. 760, affirmed 309 Pa. 586, 164 A. 719.

They all hold that, where as here, the owner, in securing the doing of the work, reserved to himself no right in connection with its doing, except the right to question the sufficiency of performance—that is, he reserved to himself no control over the means of accomplishment, but merely as to the result, the relationship thus created in the one doing the work is that of independent contractor, not of servant or employee.

Perhaps the case most nearly resembling this one is *Sechrist v. Kurtz Bros.,* 147 Pa. Superior Ct. 214, 24 A. 2d 128, in which Judge RHODES discussed the general subject with great clarity. The following excerpt from his opinion is specially applicable here: "Not only were the essential elements of employer-employee relationship lacking, but the essential elements of contractor-contractee relationship were present. This conclusion is supported by the following facts which are established by the evidence: (a) An absence of control by defendant over the details of the work which claimant was to perform; (b) claimant was engaged in a distinct occupation or business from that of defendant; (c) the work was that of a type usually performed by a specialist, and which defendant would not have been qualified to supervise or direct; (d) claimant furnished his own tools [and it may be added here, his own scaffold equipment and erected it] and employed and controlled those who assisted him; (e) claimant worked for defendant only when work requiring his skill as an electrician [here, as a carpenter and builder] was

to be performed; (f) the work which claimant did for defendant was not a part of the regular business of defendant." To this it may be added that in the *Sechrist* case the claimant and his assistants were required to record their time on a time clock, and defendant made out separate checks to claimant and his assistants.

It is clearly established that one does not have to have a contract for a lump sum or price in order to be an independent contractor. He may be paid by the hour, day, week or month for his services: *Harrison v. Collins*, 86 Pa. 153; *Karl v. Juniata County*, 206 Pa. 633, 640, 56 A. 78; *Tyler v. MacFadden Newspr. Corp.*, 107 Pa. Superior Ct. 166, 174, 163 A. 79; *Sechrist v. Kurtz Bros.*, supra, p. 218, 24 A. 2d 128.

Nor is it controlling here that Bache paid Davis and Cease their wages when asked by them to do so. It would not be controlling even if it was Bache's custom to pay the men working for Thomas on jobs for Bache: See *Bojarski v. Howlett*, 291 Pa. 485, 140 A. 544; *Persing v. Citizens Traction Co.*, 294 Pa. 230, 144 A. 97; *Venezia v. Phila. Elec. Co.*, 317 Pa. 557, 559, 177 A. 25; *Robson v. Martin*, 291 Pa. 426, 140 A. 339; *Sgattone v. Mulholland & Gotwals*, 290 Pa. 341, 138 A. 855; *Sechrist v. Kurtz Bros.*, supra, p. 218; *Lecker v. Valentine*, 286 Pa. 418, 133 A. 792.

The board based its action very largely on Mr. Bache's reply to claimant's counsel's question, "You could have dismissed Mr. Thomas from that job at any time you wanted to?", to wit, "I guess I could, yes;" (p. 28a), citing *Flaharty v. Trout*, 290 Pa. 315, 318, 138 A. 863, where Mr. Justice WALLING speaking for the Court said: "An important element in such case is the right to hire and discharge help, here retained by the defendant should it be necessary." But an examination of that case (p. 317) shows that the opinion writer was not referring to the right to discharge Flaharty, but

the help employed by the defendant to assist Flaharty, if extra men were needed to assist him.[3]  Bache denied that he had any right to discharge any of the men hired or employed by Thomas, (p. 22a) ; and when pressed by claimant's counsel as to what he would do if they were not performing their work properly, said "I would talk to Jim [Thomas] I suppose."

A contractee can always discharge a contractor from finishing his job—subject to an action for damages if the discharge is without sufficient cause; and where the contract is only to do labor, the damages would of necessity be inconsiderable.  But a contractee has no right or authority to discharge an employee of an independent contractor, and the claimant proved no such right or authority in this case.

The fact that Bache carried workmen's compensation insurance covering his employees in his store and made social security payments for them, but carried no workmen's compensation insurance for Thomas's employees and made no social security payments for them, while Thomas did both, although not controlling, is a matter that has some bearing on the relationship between Bache and Thomas: *Gailey v. State W. Ins. Fund,* 286 Pa. 311, 133 A. 498; *Lenhart v. Emmons Co.,* 99 Pa. Superior Ct., 180, 183; *Holbrook v. Wilkes-Barre,* 309 Pa. 586, 588, 164 A. 719; *Bradley v. Chester Materials Co.,* 151 Pa. Superior Ct. 485, 487, 30 A. 2d 206; *Healey v. Carey, Baxter & Kennedy,* 144 Pa. Superior Ct. 500, 502, 19 A. 2d 852.

Another matter to be considered as bearing on the relationship between Bache and Thomas is that Thomas was not paid wages as they were earned, *daily, weekly,*

---

[3] "It was understood that when more logs were needed than Flaharty, unassisted, could draw, the *defendant was to supply and pay for the extra help,* without requiring the deceased to employ an extra team or extra men to assist him." (p. 317) (Italics supplied).

or *monthly,* or at any stated time. He was paid when he presented his bill, covering all his charges, and he had presented none for over a year before his death. This practice is not usual or customary between employer and employee. It often occurs between a contractor doing odd jobs and his customers.

Thomas could not be, at the same time, the employer of the men working under him and the employee of Bache, for whom he was doing the work. See *Coccaro v. Herman Coal Co.,* 145 Pa. Superior Ct. 81, 20 A. 2d 916; *Nirenstein v. Colang Inc.,* 111 Pa. Superior Ct. 72, 169 A. 404.

We are not required, under this disposition of the case, to determine whether the work being done on the store roof, if done by an employe, would be casual and not in the usual course of defendant's business.

The judgment is reversed, the award of the board is set aside and judgment is now entered for the defendant and his insurance carrier.