Eldridge *v.* Blue Ridge Textile Co., Inc. (et al., Appellant).

Argued March 4, 1947. Before RHODES, P. J., RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*E. C. Marianelli,* for Keystone Mutual Casualty Insurance Co., appellant.

*David B. Skillman,* for Hartford Accident and Indemnity Co., appellee.

*Milton J. Kolonshey,* for claimant, appellee.

OPINION BY RHODES, P. J., April 21, 1947:

This is a workmen's compensation case in which the right of the claimant to compensation for an accidental injury sustained in the course of his employment on April 28, 1943, is admitted. The question presented is which of two successive insurance carriers, Keystone Mutual Casualty Insurance Company, or the Hartford Accident and Indemnity Company, was the carrier of the employer at the date of the accident.

The Workmen's Compensation Board, reversing the referee's ruling that the two carriers were jointly liable, held that Keystone was solely liable for the payment of compensation for claimant's accident. The court of common pleas on appeal affirmed the board. Keystone has appealed from the judgment entered against it.

Keystone was the carrier for the employer, but claimed that it canceled its policy on April 26, 1943,

and that Hartford became liable as carrier for the employer as of that date. Hartford paid compensation to claimant after entering into an open agreement to pay him compensation for his accidental injury, but alleged that it entered into such an agreement under a mistake of fact—that Hartford erroneously assumed that it was the carrier as of April 26, 1943, whereas, in fact, Keystone's policy and coverage with the employer remained in effect until May 7, 1943, thus making Keystone and not Hartford liable to claimant.

Hartford filed a petition to terminate [1] its agreement with claimant, and claimant filed a claim petition against the employer generally. The two proceedings were consolidated and heard together by the referee who decided that the policies of both carriers were in force between April 26, 1943, and May 7, 1943, and held that each carrier was liable for one-half of the award to claimant. The board, on appeal, held that Keystone's policy was not in fact canceled until May 7, 1943, and made an award against it alone.

Keystone, as appellant, seems to present two complaints: (1) That it was deprived of substantive rights in this proceeding, that neither the referee nor the board made an express finding that Hartford's agreement with claimant was entered into under a mistake of fact, and that the award against it is invalid; (2) that it was superfluous for claimant to file a claim petition against his employer when claimant had an existing binding compensation agreement with Hartford.

A review of the evidence in some detail is necessary for a thorough understanding of the issues which arise largely from the procedure adopted by the parties before the referee and the board.

On October 10, 1942, Keystone issued to claimant's employer a standard workmen's compensation policy covering the employer for one year from that date, and

---

[1] Sec. 413, par. 1, of Act of June 26, 1919, P. L. 642, as amended by Act of June 21, 1939, P. L. 520 (77 PS 771).

was admittedly the carrier until April 26, 1943. On April 17, 1943, Keystone wrote to Donald Rockwell, an attorney-at-law and insurance agent who acted for it and other companies, including Hartford, asking him to "return our policy for cancellation." In this letter Keystone also requested "that this transfer be concluded by Monday, April 26th, as we will on that day find it necessary to issue cancellation notice unless our policy has been returned." On April 26, 1943, Rockwell mailed the policy to Keystone "at your request for cancellation," and asked Keystone to compute the premium on a pro rata basis so that an adjustment could be made with the employer.

On April 26, 1943, Keystone mailed a cancellation notice to the employer and to the Pennsylvania Compensation Rating and Inspecting Bureau. This written notice addressed to the employer stated that "pursuant to its terms, Policy No. C. 560 issued to you is hereby canceled on the 7 of May, 1943, at 12:01 a. m. Standard Time at the place where said policy was countersigned." On April 28, 1943, Keystone sent Rockwell a cancellation memorandum showing May 7, 1943, as the cancellation date. Keystone's audit of the employer's payroll also showed May 7, 1943, as the date of cancellation, and the date to which earned premiums should be calculated. The premium was adjusted accordingly.

On May 28, 1943, Rockwell wrote Keystone stating that on April 26, 1943, he had replaced Keystone's policy issued to the employer with the policy of Hartford for a period of one year from April 26, 1943, and asked Keystone to accurately determine the amount of return premium due the employer which Keystone had previously stated was subject to audit. On August 14, 1943, Rockwell wrote Keystone calling attention to the fact that its notice and audit statements showed cancellation as of May 7, 1943, whereas Rockwell understood its policy was canceled April 26, 1943.

Under date of August 16, 1943, Keystone again stated that the cancellation date of its policy was May 7, 1943, and suggested that the effective date of Hartford's policy be changed to read May 7, 1943. This arrangement would avoid any double coverage, to which the employer objected, and leave Keystone alone on the risk until May 7th. Rockwell, as agent for Hartford, adopted this suggestion and changed the effective date of Hartford's policy to read May 7th. On August 20 and 25, 1943, Hartford wrote Keystone advising it of claimant's compensable injury, calling Keystone's attention to the discrepancy as to coverage and asking it to assume liability as it collected premiums from its insured to May 7, 1943. Keystone, on September 7, 1943, then replied to Hartford that it took the position its policy with the employer was canceled April 26, 1943, and hence denied liability for the payment of compensation to any claimants employed by the insured who may have been injured after April 26, 1943.

Subsequently, on September 29, 1943, Keystone wrote Rockwell, enclosing a check, informing him that it considered its policy canceled April 26, 1943, and asking Rockwell to return the premium to the employer covering the period between April 26, 1943, and May 7, 1943, which it had previously included in its audit. Rockwell returned this check to Keystone, stating that the matter in controversy was then before the compensation authorities.

Hartford, assuming that it was the carrier as of April 26, 1943, entered into a compensation agreement with claimant on June 7, 1943, and a supplemental agreement on June 23, 1943. The latter recognized the loss of the distal joint of claimant's second and third fingers of his right hand, and provided for payment at the rate of $18 per week for 25 weeks. On September 3, 1943, in view of Keystone's insistence that May 7th was the proper cancellation date, and its retention of premiums calculated thereto, Hartford filed a petition to terminate

its agreement with claimant, to which was attached copy of Keystone's letter to Rockwell of August 16, 1943.

Claimant, in view of the controversy between the carriers, filed a claim petition January 26, 1944, against his employer. By express agreement of counsel for all the parties, including the present counsel for Keystone, the two petitions were consolidated and heard together before a referee on June 16, 1944. At that time present counsel for Keystone made a statement on the record in which he called attention to the fact that the former attorney for Keystone in this case had filed an appearance de bene esse because "he didn't think the compensation authorities had a right to determine the issue presented by the pleadings." Counsel continued: "But Mr. Bialkowski is no longer attorney in the case and I have been authorized to represent the Keystone Mutual Casualty Company and desire to withdraw said appearance de bene esse, and in lieu thereof, I wish to dictate into the record an answer stating that the *Keystone Mutual Casualty Company's only defense to this claim petition is that it was not the insurance carrier on the date of the accident, April 28, 1943,* that its policy with the employer had been cancelled on April 26, 1943." (Italics supplied.) Thereupon the referee read into the record an agreement of the parties in which claimant's injury was admitted to be compensable under the Act. This agreement or stipulation of facts set forth that Hartford entered into a compensation agreement and a supplemental agreement with claimant, and that it presented its petition to terminate such agreement as it was entered into in error, and its policy was not effective until May 7, 1943, a date subsequent to the time of the accident. The ninth paragraph of the agreement or stipulation reads: "9. The Keystone Mutual Casualty Company, through its attorney, Mr. Marianelli, today makes the statement that the defense is limited to the question of which insurance carrier is liable for the benefits under the act." Counsel for Keystone then pro-

ceeded to read into the record the correspondence between Rockwell, the two carriers, and the insured, to which we have previously referred in this opinion.

We are of the opinion that an analysis of Keystone's contentions, when considered in relation to the facts, reveals them to be without merit.

In the first place, there is ample evidence to support the finding of the board, the ultimate fact-finding body, that Keystone was the carrier of claimant's employer between April 26, 1943, and May 7, 1943, or on April 28, 1943, the date of claimant's accidental injury; and the finding is therefore binding upon us. *Bronkowski v. Colonial Colliery Co.*, 153 Pa. Superior Ct. 574, 576, 34 A. 2d 837.

There is no basis presented in this case for Keystone to complain that its substantive or procedural rights under the Workmen's Compensation Act were violated. It agreed on the record, through its counsel, that the hearing before the referee on the two petitions—Hartford's petition for termination, and claimant's claim petition against the employer—would be consolidated; that claimant was entitled to compensation for a specific loss; and that the sole issue before the compensation authorities was which of the two carriers was the carrier on the date that the claim arose. Even if there had been no such stipulation, we think that the compensation authorities would have had jurisdiction to hear and determine this issue. Ordinarily they have jurisdiction to determine the general question of the liability of an insurer under the policy and whether the policy is in force or has been canceled. Cf. *Levan v. Pottstown-Phoenixville Ry. Co. et al.*, 279 Pa. 381, 124 A. 89; *Adams v. Brandon et al.*, 111 Pa. Superior Ct. 471, 170 A. 391; *Stewart v. Mullineaux et al.*, 138 Pa. Superior Ct. 43, 10 A. 2d 122; *Wahl v. State Workmen's Insurance Fund et al.*, 139 Pa. Superior Ct. 53, 11 A. 2d 496.

Under article 6, § 651, of the Insurance Company Law of May 17, 1921, P. L. 682, 762, 40 PS § 811, the

insurance carrier is directly liable to an injured employee and, when it voluntarily becomes a party to the litigation and assumes the defense, it is bound by an award made against it. *Shay v. North Side Bank and Trust Co. et al.* (No. 1), 132 Pa. Superior Ct. 53, 59, 60, 200 A. 302; *Cease v. Thomas et al.*, 155 Pa. Superior Ct. 215, 38 A. 2d 547. The procedure adopted in this case, whereby several alleged carriers are brought upon the record to determine their respective liability to claimant in a single proceeding, is proper and desirable. Cf. *Healey v. Carey, Baxter & Kennedy, Inc., et al.*, 144 Pa. Superior Ct. 500, 502, 19 A. 2d 852.

The agreement or stipulation as to consolidation of the two petitions, and as to the single issue involved, was valid and binding upon the parties. *Thomas v. Bache et al.*, 155 Pa. Superior Ct. 224, 233, 38 A. 2d 551. Keystone is estopped and cannot repudiate the agreement. *Huckestein & Co. v. J. Kaufman & Bros.*, 173 Pa. 199, 33 A. 1028.

Keystone's legal rights were in no way infringed. The instant proceeding, with the stipulation, was not unlike the submission of a dispute to arbitrators, in which case the award of the arbitrators will be final if the arbitrators did not exceed their authority or otherwise arrive at the award improperly. *Huckestein & Co. v. J. Kaufman & Bros., supra*, 173 Pa. 199, 33 A. 1028; *Britex Waste Co., Ltd., v. Nathan Schwab & Sons, Inc.*, 139 Pa. Superior Ct. 474, 12 A. 2d 473.

The compensation authorities complied substantially with the procedural requirements of the Act in this case. The single issue before the referee was the identity of the carrier as of the date of the accident. It is true that the referee made no express finding that Hartford's policy was erroneously issued on April 26, 1943, as he found that both carriers were on the risk during the period in question.

On appeal, however, the board fully considered the issue as to which carrier was on the risk at the date of

the accident. The board decided that the "Policy of Hartford USP 83600 was not in effect until May 7, 1943." The board, in its discussion, found that Keystone alone was the insurer during the period in question. Furthermore, the board, in substance, ruled upon Hartford's petition to terminate when it stated: "We believe that there is little room for complaint of Hartford's action in this case. It erroneously entered into a compensation agreement and made payments pursuant thereto. It believed that its policy had been placed in effect by Rockwell, the common agent, on April 26, 1943." This is, in effect, a finding that Hartford entered into its agreement with claimant under a mistake of fact. As long as the compensation authorities make findings which substantially comply with the requirements of the Act, it is immaterial in what manner the authorities designate them. *Dainty v. Jones & Laughlin Steel Co.,* 263 Pa. 109, 106 A. 194; *Flucker v. Carnegie Steel Co.,* 263 Pa. 113, 106 A. 192; *Wahs v. Wolf et al.,* 157 Pa. Superior Ct. 181, 186, 42 A. 2d 166.

The board could have been more specific in its findings on the termination petition, but we find no error of law invalidating the board's action or making it necessary to remit the record for more complete findings. The findings were sufficient to determine the issue, and to enable the court to pass upon the questions of law involved.

Nor can Keystone reasonably assert that the filing of the claim petition by claimant against his employer, on January 26, 1944, was superfluous. Keystone expressly agreed to this procedure, and adopted it as a means of determining the issue between it and Hartford, and appeared generally to defend against the claim petition on the merits. Keystone cannot take inconsistent positions at the same time; it cannot be heard to say that Hartford's termination petition is all important, whereas claimant's petition against the employer is superfluous. It stipulated and agreed that a single issue

was to be presented for decision, and that the consolidated petitions were to be viewed as one procedure. The compensation authorities had jurisdiction, there is evidence to support their findings, and we find no reversible error in the proceedings.

Judgment in appeal No. 155, October Term, 1946, from No. 29, September Term, 1945, is affirmed.

Appeal No. 156, October Term, 1946, from No. 30, September Term, 1945, is dismissed, at the cost of appellant.