## Simonton *v.* Morton, Appellant.

*Workmen's compensation — Master and servant — Independent contractor—Control.*

1. Where a contract is let for work to be done by another in which the contractee reserves no control over the means of its accomplishment, but merely as to the result, the employment is an independent one establishing the relation of contractee and contractor and not that of master and servant.

2. A provision in the contract inserted for the purpose of guaranteeing ultimate performance in accordance with the agreement, does not fix control over the means and manner of execution.

3. The control of the workmen doing the actual manual labor in the performance of the work is an extremely important element in determining whether the employee is an independent contractor. The fact that the contractor employs, pays, and has full power to control the workmen is practically decisive of his independence.

Colleoni v. D. & H. Co., 274 Pa. 319, followed.

Kelley v. D., L. & W. R. R., 270 Pa. 426, distinguished.

Argued October 9, 1922. Appeal, No. 19, Oct. T., 1922, by defendant, from order of C. P. Allegheny Co., July T., 1921, 3122, affirming decision of Workmen's Compensation Board, in case of Richard M. Simonton v. Philip Morton. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Appeal from decision of Workmen's Compensation Board. Before EVANS, J.

The opinion of the Supreme Court states the facts.

The contract referred to in the opinion of the Supreme Court is as follows:

This memorandum of Agreement entered into this 3d day of May, 1918, by and between Ph. Morton, of Cincinnati, Ohio, and R. M. Simonton

Witnesseth: The said R. M. Simonton agrees to furnish the necessary labor to build, repaint, paint, and repair railroad and highway bulletins in the following designated zone No. 9 as per map hereto attached, also list of location of bulletins, showing dates repaints fall due and names of customers and numbers of boards, and to be paid therefor the amount as indicated in the schedule of prices hereto attached, and made a part hereof and marked Schedule of Prices Exhibit "A."

First. Where new bulletins are to be built the said R. M. Simonton agrees to secure space from property owners for locations of bulletins and to have locations so selected by him approved in writing by the advertiser whose advertisement is to be placed on the bulletins to be built. All bulletins to be built as per specifications hereto attached, made a part hereof and marked schedule "B."

Second. To paint on the bulletins so built, or on bulletins selected by the advertiser, from bulletins heretofore built and owned by Ph. Morton, in a good and workmanlike manner, the design from sketch and pattern furnished him by Ph. Morton in the same color as

designated in said sketch, and to be paid for such work the amount as indicated in schedule "A" as aforesaid.

Third.    To paint a change of design on any bulletins owned by Ph. Morton when ordered so to do by said Ph. Morton at price shown on schedule "A" aforesaid.

Fourth.    To furnish the necessary labor and to repair and replace all bulletins that may be damaged by any cause whatsoever, and to keep all bulletins in said above described territory on continuous exhibition, and the view unobstructed by weeds or brush during life of advertiser's contract, and for such services herein provided the said R. M. Simonton is to be paid $1 per annum for each board in the service of any advertiser within the above described territory in quarterly installments.

Fifth.    To take a picture of all bulletins at close proximity, both before and after repairs or repaints are made. Also to take a picture from highway to which bulletins shown and to forward films for developments to said Ph. Morton, 830 Wade St., Cincinnati, Ohio.    Films must accompany report and have sufficient time to develop same before passing report for payment.

Sixth.    To obtain written approval on blanks furnished by said Ph. Morton from advertiser approving locations and workmanship on all new contracts, and to obtain written approval from customers on all repaints made by him when ordered so to do by Ph. Morton.

Seventh.    To report to Ph. Morton weekly report on blanks furnished by said Ph. Morton, of the amount of work done by him from time of last report. .

Eighth.    It is agreed that Ph. Morton is to withhold 20% of any money due under this contract, pending the completion of the work done and written approval of same by the advertiser as provided for in paragraph six. Any amount withheld by Ph. Morton after receipt of advertiser's approval of work shall draw interest at 8% from receipt of approval.                    .

Ninth.    It is understood and agreed that the said R. M. Simonton is to pay all his traveling, hotel and inci-

dental expenses, also all cost of drayage in transferring material from freight or express office to place where materials are to be used, and also all storage charges that may accrue on shipments forwarded to him by reason of his failure to move same, as all materials are to be shipped to place where bulletins are to be built as per instructions furnished by the said R. M. Simonton.

Tenth. To use all paints as furnished by said Ph. Morton without thinning or reducing in any manner as directed by said Ph. Morton.

Eleventh. To remove all old boards and to reërect new locations, to remove boards for location in which they were originally on account of change of ownership or property for any cause. These changes to be made only when ordered by said Ph. Morton, to safely store salvage materials from such boards for future use and to be paid for such work at the schedule of prices hereto attached and marked exhibit "A."

Twelfth. The said R. M. Simonton is to furnish all necessary tools for his use in performing the work specified to be done under this contract.

Thirteenth. The said R. M. Simonton agrees to take up his residence at a point in said zone that will be most accessible to his work, according to his own selections.

Fourteenth. The said Ph. Morton agrees to pay the rentals promptly on all space secured by R. M. Simonton, to furnish all lumber, nails, paint and other necessary material to build or repaint bulletins. To furnish sketch to be painted on bulletin boards and necessary paint and color for same, and to pay the said weekly 80% of the amount that may be due him under this contract on presentation at Cincinnati, Ohio, of order issued by Ph. Morton with notation that work is completed together with negative of photograph of work done and under order and to pay the balance of 20% on receipt of the advertiser's approval of work done.

The said Ph. Morton further agrees to sell brushes, tools, etc., to the said R. M. Simonton at net cost to the

said Ph. Morton. Said Ph. Morton further agrees to furnish and ship all materials for building bulletins and for painting same so as to have material on hand on arrival of said R. M. Simonton at place where bulletins are to be built and to prepay all freight and express charges on same.

It is further agreed and understood that the said R. M. Simonton is to devote his entire time to the care and maintenance of the bulletin boards located in the aforesaid zone, unless otherwise directed by the said Ph. Morton.

This contract may be terminated at any time by either party hereto given sixty days' notice in writing of their intentions to cancel same and may be cancelled at any time without notice in the event party of the second part fails to perform any of the conditions herein stipulated to be performed by party of the second part.

Attestation clause and signatures appended.

Decision affirmed. Defendant appealed.

*Error assigned,* inter alia, was order, quoting it.

*Frank W. Stonecipher,* with him *John M. Ralston,* for appellant.—That the terms "employer" and "employee," as used in the Workmen's Compensation Act of 1915, are synonymous with "master" and "servant" is no longer questioned.

The claimant occupied the position of an independent contractor: Smith v. State Workmen's Ins. Fund, 262 Pa. 286; McColligan v. R. R., 214 Pa. 229; Colleoni v. D. & H. Co., 274 Pa. 319.

*Charles H. Young,* for appellee.—The relation of master and servant existed between the parties: Smith v. Ins. Fund, 262 Pa. 286; McColligan v. R. R., 214 Pa. 229; Kelley v. Ry., 270 Pa. 426.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1923:

Defendant is engaged in the business of erecting highway signboards and leasing space and painting signs thereon for advertisers. Plaintiff entered into the contract with him which appears above and while engaged in work on one of the signboards was injured. Claiming to be an employee of defendant, he began a compensation proceeding and an award was made in his favor, which was confirmed by the common pleas on appeal; as a result of the judgment there entered, defendant brings the record to us, setting up that plaintiff was not his employee but an independent contractor.

What was the relation between appellant and appellee as fixed by their written contract? We have had occasion to consider the question of independent contractor or employee in quite recent cases: Smith v. State Workmen's Ins. Fund, 262 Pa. 286; Kelley v. Delaware, Lackawanna & Western R. R. Co., 270 Pa. 426; Colleoni v. Delaware & Hudson Co., 274 Pa. 319. In the last one (Colleoni v. Delaware & Hudson Co.), as in the case at bar, by the terms of the contract the party who performed the work was to do it for certain specified prices set out in the agreement; there the party for whom the work was to be done was to furnish the mules, cars, timber and track material required to remove the pillars of coal; here he was to furnish the paint, lumber, nails and other necessary material to build and paint the signs; there the defendant reserved the right to annul the contract and stop work upon five days' notice; here the contract could be terminated by either party on sixty days' notice, and could be cancelled by defendant at any time, without notice, in the event that plaintiff failed to perform any of the conditions stipulated to be carried out by him; there the contractor was obliged to furnish the workmen necessary to carry out his agreement, fix their wages and report their time to the defendant company, who paid to those engaged in the work the amount due and charged each payment against the contract;

here, the plaintiff agreed to furnish the necessary labor and pay it, and in addition he was to pay all traveling, hotel and incidental expenses. In that case, the defendant mine-owner retained no control over workmen or the manner of doing the work except such as might be inferred from the stipulation that the work should be done according to the directions of the mine foreman; in the case in hand, the only control exercised by the defendant is found in the provisions of the contract that the design and color of the advertisements shall be provided by him, that pictures of the completed signs are to be forwarded to him before payment, that the approval of the advertiser was to be obtained, that a weekly report was to be furnished to defendant of the amount of work done, that plaintiff had engaged his entire time for the care and maintenance of the signboards, that defendant had the right to direct where the work was to be done, and, when a change of design was to be painted, it should be only when directed by him, and when signboards were to be removed to new locations their relocation was to be only on his order, and that he was to furnish the materials. In the case to which we are referring, as in the others cited, we held the rule applicable to the relation of the parties to be, "Where a contract is let for work to be done by another in which the contractee reserves no control over the means of its accomplishment, but merely as to the result, the employment is an independent one establishing the relation of a contractee and contractor and not that of master and servant." This is the governing principle in the instant case. When the agreement between the parties comes to be tested by this rule, it is apparent that the contractee reserved no control over the means of its accomplishment, but merely as to the result. The contract provides that the contractor shall furnish the labor, that he shall secure the space from property-owners, on which to locate the signboards and keep them unobstructed for view, that he shall pay all traveling, hotel and incidental expenses and all cost of drayage in

transferring materials from freight or express stations to places of use, and also all storage charges on materials, and furnish tools; he was to be paid a stipulated price for each particular thing he did irrespective of his own expenditures; all these negative the idea of a master and servant relation.

It is urged upon us, by appellee, that the contract shows, in certain of its aspects heretofore enumerated, that the contractee had the right to exercise control over the work; it is apparent however that these provisions are for the purpose of guaranteeing ultimate performance in accordance with the agreement, not to fix control over the means and manner of execution. There necessarily must be a certain control by the contractee of all undertakings such as the one we are considering, otherwise he could not safeguard himself as to the satisfactory accomplishment of the work. "As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control—at least to enable him to see that the contract is performed according to the specifications. The employer may exercise a limited control over the work without rendering the employee a mere servant, for the relation of master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract. The control of the work reserved in the employer which makes the employee a mere servant is a control, not only of the result of the work, but also of the means and manner of the performance thereof": 14 Ruling Case Law 68. A reservation of the right to supervise and inspect the work during performance does not make the contractor a mere servant, where the mode and means of performance are within his control: 14 Ruling Case Law 69.

In the case in hand, it is conceded that the contractor employed, paid and had full power to control the workmen. This is one of the most important consider-

ations in construing the contract to determine the relation of the parties. "The control of the workmen doing the actual manual labor in the performance of the work is an extremely important element in determining whether the employee is an independent contractor. The fact that the contractor employs, pays, and has full power to control the workmen is practically decisive of his independence": 14 Ruling Case Law 71.

The learned judge below who determined the case in plaintiff's favor relied for his decision on Kelley v. Delaware, Lackawanna & Western R. R. Co., 270 Pa. 426. That case is readily distinguishable from the one with which we are now dealing; there the contract specifically provided for the control of the means of performance by the contractee's foreman, that the manner of doing the work should be to the satisfaction of its manager, that the contractee should have the right to suspend or terminate the work without notice to the contractor and the right to remove from the work any workmen who in the opinion of its manager were incompetent, careless or for any other reason unsatisfactory, and that the interpretation of the writing with reference to the work should be by the employer's manager, whose decision should be conclusive. In disposing of that case, we said: "It is therefore manifest that, through the manager and mine foreman, full control over the means and manner of performance was reserved to defendant, and there was left in the contractor no independence whatever in manner and means of performance." In the case now before us, full control over the means and manner of performance was reserved to the contractor and he was therefore independent.

Being of opinion as we are that the plaintiff was not an employee of defendant, but an independent contractor, it follows that the court below erred in awarding compensation.

The judgment is reversed and is here entered for defendant.