Smith-Faris Company, Appellant, *v.* Jameson Memorial Hospital Association et al.

Argued Ocobert 4, 1933.   Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Clarence A. Patterson,* with him *J. Clyde Gilfillan,* of *Gilfillan & Patterson,* for appellant.

*J. N. Martin,* of *Martin & Martin,* with him *Matthews & Jamison* and *Lockhart & Long,* for appellee.

Opinion by Mr. Justice Maxey, November 27, 1933:
This is a scire facias sur mechanic's lien filed by The Smith-Faris Company against the Jameson Memorial

Hospital Association, owner, and R. T. Withers Sons Company, contractor. Plaintiff below secured at the direction of the trial judge a verdict in the sum of $5,-577.34, but the court later entered judgment n. o. v. in favor of the defendant. From this judgment plaintiff appeals.

The issue being made up of a scire facias sur mechanic's lien, an affidavit of defense and a replication, the plaintiff at the trial offered in evidence: (1) a written contract of the Hospital Association with the Boldt Construction Company for the erection and construction of a hospital and nurses' home at an estimated cost of $500,000; (2) the contract of the Boldt Construction Company with R. T. Withers Sons Company for the installation of a heating plant and plumbing system; and (3) the order of the R. T. Withers Sons Company addressed to The Smith-Faris Company for certain labor and materials for pipe coverings for the plumbing and heating work in the hospital and nurses' home, at a cost of $4,900, and proof that relying on their order The Smith-Faris Company furnished and installed labor and materials in the hospital and nurses' home to the extent of $4,300.

In addition thereto W. F. Walker, agent, and J. H. Blair, Superintendent of the Hospital Association, addressed a written order to R. T. Withers Sons Company for covering pipe and fittings for the hospital not included in the plans and specifications. The Smith-Faris Company filled this order, supplying labor and materials amounting to $391.22.

Subsequently R. T. Withers Sons Company was adjudged insolvent and a receiver was appointed. Thereafter the Hospital Association ceased to make payments to R. T. Withers Sons Company and withheld approximately $5,000 to cover the amount due appellant, awaiting the outcome of this litigation.

The decision turns on the question: Was The Smith-Faris Company a subcontractor and therefore entitled

to the benefits of the Mechanics' Lien Act, or is the company a *sub-sub*contractor and therefore not entitled to the benefits of this act? The determination of this question depends on the determination of the primary question, which is: Was the relation of the Boldt Construction Company to the Hospital Association that of independent contractor or that of agent? If the construction company was merely an agent, The Smith-Faris Company was a subcontractor. If the construction company was an independent contractor, The Smith-Faris Company was a *sub-sub*contractor.

The Mechanics' Lien Act of 1901, P. L. 431, defines "contractor" as "one who, by contract or agreement, express or implied, with the owner or the one who acts for the owner, plans or superintends the structure or other improvement, or any part thereof; or furnishes labor, skill or superintendence thereto; or supplies or hauls materials, reasonably necessary for and actually used therein; or any or all of them, whether as an architect, superintendent, builder or materialman."

The contract between the Hospital Association and the Boldt Construction Company is entitled "Contract for the Erection and Completion of a Hospital and Nurses Home for The Jameson Memorial Hospital Association at New Castle, Pennsylvania." Throughout the contract the Boldt Construction Company is termed "the Constructor" except in article III where it is also referred to as "the Contractor." The constructor agrees that it will "furnish and erect complete, in a skillful, thorough workmanlike and substantial manner a Hospital and Nurses Home......in accordance with the plans, specifications and details now being prepared, ......or such modification of same as the Owner or Architects may decide upon." (2) That it will "furnish all the material and do all the work strictly in accordance with the plans, specifications and details relating to this work, and deliver to the Owner the structures finished and complete." (5) That it will "indemnify

and save harmless the Owner from laborers' and mechanics' liens upon the premises......providing that the Owner shall have paid to the Constructor the amount owing to him." (7) "After securing a number of quotations from reputable dealers in such materials, the Constructor shall place the necessary purchase orders to the Owner's best advantage and the Constructor is to consult the Owner and purchase materials and supplies as the Owner may request." (9) That it "shall furnish to the Owner" each month "an itemized statement for the preceding calendar month, of the actual cost......of all labor and expense incurred and sustained in, and incident to the construction" of the building. (14) The owner will advance to the Constructor each week sufficient funds to cover the amount of the payrolls incurred each week. The owner will pay to the Constructor within five days after the receipt and approval of the monthly statement, the balance due the Constructor up to the amount of the entire actual cost of the labor for the preceding month. (16) In addition to the actual cost of the building of the structures "the Owner shall pay to the Constructor for his services and for the rental of his equipment, the sum of Twenty-five Thousand ($25,000) Dollars in monthly payments of Two Thousand ($2,000) Dollars during the progress of the work and the balance, if there be one, when the work is completed, but the monthly payment of Two Thousand ($2,000) Dollars is to begin after work on the buildings has been commenced." (17) "The Constructor shall furnish to Owner a bond for Twenty-five Thousand ($25,000) Dollars with satisfactory Surety Company as surety, providing for prompt payment to Subcontractors, labor and Materialmen of the amounts due them as awarded and paid over by the Owner from time to time." (20) "It is understood and agreed that in placing orders for materials and awarding of subcontracts, the wishes of the Owner is to be respected, and in the employment of mechanics or help during the construc-

tion, Owner is to have a voice." (23) "If the Constructor erects and completes these two buildings at not to exceed the estimate of $500,000, he is to receive an additional fee or compensation of $7,500 upon the completion of the work."

In 14 R. C. L., page 67, there is laid down this principle: "The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor." In the case of Simonton v. Morton, 275 Pa. 562, 569, 119 A. 732, this court quoted approvingly the following from 14 R. C. L., pages 68, 69: " 'As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control—at least to enable him to see that the contract is performed according to the specifications. The employer may exercise a limited control over the work without rendering the employee a mere servant, for the relation of master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract. The control of the work reserved in the employer which makes the employee a mere servant is a control, not only of the result of the work, but also of the means and manner of the performance thereof.' A reservation of the right to supervise and inspect the work during performance does not make the contractor a mere servant, where the mode and means of performance are within his control." This court further said in that case: "In the case in hand, it is conceded that the contractor employed, paid and had full power to control the workmen. This is one of the most important considerations in construing the contract to determine the relation of the parties...... 'The fact that the contractor

employs, pays, and has full power to control the workmen is practically decisive of his independence': 14 R. C. L. 71."

The mere fact that the Boldt Construction Company was except in one instance referred to in the contract as "constructor" is not determinative of the question before us. "Neither the form of a contract nor the name given it by the parties controls its interpretation. In determining the real character of a contract courts will always look to its purpose, rather than to the name given it by the parties. ...... The proper construction of a contract is not dependent upon any name given it by the parties, or upon any one provision, but upon the entire body of the contract and its legal effect as a whole": 6 R. C. L., page 836, section 226.

It is clear that the Hospital Association reserved to itself a certain degree of control over the work to be done by the construction company but this control did not take away the latter's independence; it merely removed that independence a few degrees further away from absoluteness than it otherwise would have been. In actuality all independence is more or less relative. Only when the independence of a contractor is so completely taken away as to make his selection of the means and methods of carrying out his work subject to his employer's will does he become a mere employee or agent. Here the contractor furnished the materials and supplies, though it is true that the purchases had to be made "as the owner requested," but whether the owner did make any such requests and how frequently does not appear. Since under the contract the cost of the materials was an important factor in determining the ultimate cost of the structures the provision as to the owner's "request" protected the owner against the purchase by the contractor of materials unnecessarily expensive. Except as to any request the owner did in fact make, the contractor had entire freedom of action in its purchases. An owner of a house being erected might reserve the right to deter-

mine even after the work of construction had started whether the flooring should be oak or pine, whether the paneling should be mahogany or walnut. This would interfere somewhat with the contractor's complete independence in erecting the home, but it would not affect his status of "independent contractor." When a contractor builds any structure *according to plans and specifications* his independence is pro tanto affected but his status as an "independent contractor" is not.

Appellant stresses the provision in article 20 that "in placing orders for materials and awarding of subcontracts, the wishes of the Owner is to be respected, and in the employment of mechanics or help, Owner is to have a voice." This is an invasion but not a denial of the contractor's freedom of action. It means that when the contractor places orders for materials and awards subcontracts its acts are subject to the owner's wishes, if the owner have any, and if these wishes are expressed they must be "respected." This provision is far from meaning that the contractor could not place any orders for materials or award any subcontracts, and that all this had to be done by the owner or by the contractor acting merely as the agent for the owner. Likewise the provision that the owner was "to have a voice" in the employment of mechanics was not a taking away of the contractor's right "to hire and fire" employees. The only definition that would be applicable here of the word "voice" is that found in Webster's New International Dictionary: "Wish, choice, or opinion more or less formally expressed; as, 'his voice was for war.'" A "voice" one may have in any matter is not necessarily the voice of *authority.* It is quite likely to be only the voice of advice or counsel. Having a voice in the selection of help did not mean that this owner could select the help but it meant that he had the right to express an opinion or wish as to the help selected. There is nothing in the contract which gives the owner any authority to direct the help in the actual performance of their work. The

control and direction of the workmen during the actual manual labor was in the hands of the construction company, and as we said in Simonton v. Morton, supra, quoting from 14 R. C. L. 71: this "is an extremely important element in determining whether the employee is an independent contractor." Nor in the contract is there any right reserved to the owner to discharge the help; nor does the fact that the contract provides that the owner can terminate the contract under certain conditions make the construction company any less an independent contractor. This provision is not inconsistent with the "independence" of a contractor up to the time of the contract's termination. All contractors (except matrimonial) can incorporate such a provision in their contracts.

The contract in at least three instances refers to "subcontracts" or "subcontractors." These latter could only be "subs" to the contractor or constructor. For example, in article 14 appears the phrase, "the actual cost to the Constructor of Subcontracted work, materials and supplies." The principal would not characterize as "subcontractors" those who dealt with his mere agents. The construction company's acceptance of the word "contracts" or "subcontracts" in the articles of agreement is a recognition by it that it was a contractor and not merely an agent.

Appellant strongly urges upon us the reasoning in Harvey v. Corbett, 77 Oregon 51, 150 Pac. 263, and refers to the contract in the Oregon case as "such a contract" as the "type" before us. We find many differences in these two contracts. In the Oregon contract the owner described himself as the "principal" and the construction company was described as the "agent." The contract provided, inter alia, that "the agent shall have the right to enter into contracts for and on behalf of the principal and in its name for the purchase of all necessary material and the hiring of necessary labor." All contracts except as to minor matters were to be sub-

mitted to the principal for approval. The court said in that case: "The authority of the owners, acting through their chosen supervisor, was paramount to that of Hurley-Mason Company [the constructors]. This authority the owners exercised when their servant ordered the fastening of the scaffolding taken away from the building." In the case before us while the owner designated W. F. Walker as its representative to act for it, Walker's authority appears to have been only to approve all original invoices and to check them with material delivery tickets daily or as the materials were delivered at the site, and if the constructor furnished any material from its own stock to determine the prices therefor and to terminate the contract in certain contingencies. There appears nowhere in the contract any authority in the representative to direct the employees as to how to perform their duties, or, as in the Oregon case, to order the fastening of the scaffolding taken away from the building, or to do anything else of a constructive or of a destructive character. It is manifest that the Boldt Construction Company was a *contractor*, as that term is defined in the Mechanics' Lien Act of 1901, supra, and that the R. T. Withers Sons Company was a subcontractor. This would make The Smith-Faris Company a *sub-sub-contractor* and therefore beyond the protection of the Mechanics' Lien Law.

The other question raised is whether or not the claimant was entitled to compensation amounting to $391.22 for the pipe coverings and fittings and labor not included in the plans and specifications and which it pleaded and proved it furnished to the Hospital Association upon the written order of W. F. Walker, agent, and J. H. Blair, superintendent, addressed to R. T. Withers Sons Co. In furnishing this material and labor the claimant was a subcontractor and was therefore within the protection of the Mechanics' Lien Law. While the question of compensation for this extra material and labor was not mentioned in the stipulation filed in this case as a question

to be argued, its exclusion was apparently an inadvertence for the evidence relating to this question was printed in the record and both appellant and appellee printed this question in varying forms in their respective statements of questions involved. If the stipulation was meant to exclude this question, this exclusion was thus apparently later waived by the appellee.

The judgment is reversed and is herein entered for the plaintiff in the sum of $391.22 with interest.