Selig, Appellant, *v.* Philadelphia Title Insurance Company.

Argued November 15, 1954. Before Stern, C. J., Stearne, Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

*Samuel A. Goldberg,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*Daniel Marcu,* for appellee.

Opinion by Mr. Justice Chidsey, January 3, 1955:
This action in assumpsit was brought by the plaintiff, Milton E. Selig, an attorney, to recover $11,855.27

with interest from the defendant, Philadelphia Title Insurance Company, for the alleged conversion of certain bonds which plaintiff pledged to the defendant. After filing an answer to the complaint containing new matter and plaintiff's reply thereto, defendant moved for judgment on the pleadings. The court being of the opinion that no liability existed, entered judgment for the defendant. This appeal by the plaintiff followed.

The litigation arose out of the following factual situation as disclosed by the pleadings. By a sheriff's deed, dated January 20, 1947, Penn Bond and Mortgage Co., hereinafter referred to as Penn, acting through its straw party, Noah Parker, became the owner of premises 1231-35 Race Street in Philadelphia, Pennsylvania. Subsequently by deed, dated November 19, 1948, Noah Parker conveyed the property to Joseph S. Finkel, another straw party for Penn. Prior to this last conveyance plaintiff, acting on behalf of Penn, applied to the defendant to insure the title of the conveyance and to insure a mortgage on the premises in the amount of $60,000 which was to be created directly in favor of Penn. On March 22, 1948 defendant sent a copy of its settlement certificate to the plaintiff. The certificate listed as unpaid and delinquent certain city and school tax obligations amounting to approximately $17,000. At settlement, on November 19, 1948, plaintiff presented tax receipts to defendant's settlement clerk which showed payment of the city taxes and satisfaction of the liens for such taxes. The plaintiff admitted in his reply that acting in behalf of Penn, he paid the principal amount of the taxes due but did not pay the interest and penalties in connection therewith for he assumed that they had abated in accordance with the Tax Abatement Act then in effect. Although the interest and penalties had not been paid,

the liens for all the city taxes were marked satisfied of record in the Prothonotary's office. However, in April or May, 1948 the Receiver of Taxes of the City of Philadelphia, having discovered that these taxes were erroneously marked satisfied, caused the city tax account on the Delinquent Records for interest and penalties of the City of Philadelphia to be reopened and the records marked "interest and penalty due" as to the property in question.

Following this course of events, on December 6, 1948 one Max N. Carol, acting on behalf of Daniel J. Sheeran who was purchasing the property from Penn's straw man, Joseph S. Finkel, applied to the defendant for title insurance. Settlement for this conveyance took place on November 22, 1949. Defendant asserted in its answer under new matter that before settlement was completed it notified the plaintiff, as Penn's representative at the settlement, that it would not issue its policy of insurance until all taxes affecting the property had been paid. Plaintiff alleged in his reply that any request by defendant for the payment of interest and penalties was immaterial and irrelevant because no liens of record remained unsatisfied. However, plaintiff did admit that subsequent to the date of settlement he paid approximately $6,000 toward the interest and penalties on the tax claims at the request of W. Frank Marshall, Receiver of Taxes. He also admits that at defendant's request he delivered to the defendant United States Treasury bonds of the par value of $12,000, enclosed in the following letter, dated May 2, 1950: ". . . Phila. Title Insurance Company 220 South 16th Street Philadelphia, Penna. Gentlemen: We enclose herewith $12,000.00 U. S. Treasury Bonds as follows: U. S. Treasury 2½'s 1966-71 $10,000 No. 42359-K $1,000 No. 210398-J $1,000 No. 1710-L. These are to be held by you as your Indemnity against any

liability for payment of interest or penalty alleged to be due on premises 1231-35 Race Street. Very truly yours, Milton E. Selig".

Defendant's letter of May 3, 1950 acknowledging receipt of the bonds reads as follows: ". . . Milton E. Selig, Esq. 1100 Bankers Securities Building Philadelphia 7, Pa. Dear Sir: Subject: Title No. 29537 1231-35 Race Street, This Company has been asked to insure a conveyance of premises 1231-35 Race Street, Philadelphia, without requiring, at this time, the payment of interest and penalties due on certain City and School Taxes covering said premises, and the satisfaction of the liens filed for such taxes. We have received from you U. S. Treasury Bonds totalling $12,000; and we will hold these bonds to protect the Company against such unpaid items and the unsatisfied liens appearing against said premises. *It is understood between you and this Company that if, on December 31, 1950, settlement has not been made by you with the City of Philadelphia and the School District of Philadelphia, and the said interest and penalties paid or otherwise stricken from the tax books and the liens filed therefor satisfied of record, then this Company is authorized, without further notice to you, to convert said bonds on deposit with this Company, into cash, and pay such sum or sums to the City of Philadelphia and the School District of Philadelphia necessary to procure the satisfaction of said liens.* Yours very truly, /s/ J. Franklin Bennett President". (Emphasis supplied).

On May 19, 1950 plaintiff sent the following reply to defendant's letter: ". . . Thank you for your letter of May 3, 1950 in the above matter. We certainly hope to clear this matter up before December 31, 1950. However, if it should take beyond that date it would not be necessary for you to take any action, since you are

fully protected. I want to assure you of my apprecia-
tion for your cooperation in this matter. Very truly
yours, Milton E. Selig".

From the date of this letter until December 31, 1950,
plaintiff took no action to clear up the situation. De-
fendant waited until February 13, 1952 and then sold
the bonds for $11,705.27 and on February 20, 1952 paid
the balance of the delinquent interest and penalties
due on city and school taxes. On January 28, 1954
the plaintiff instituted the proceeding involved in this
appeal.

There is no dispute that the three letters referred
to constituted the agreement pursuant to which the
bonds were pledged. The controversy between the par-
ties centers around their construction, the pivotal is-
sue being upon what terms did the minds of the par-
ties meet. It is the plaintiff's position that the con-
tract was one of indemnity only and as such defend-
ant had no right to resort to the bonds to satisfy tax
claims which it was not obligated to pay and conse-
quently for which it could not have sustained any
loss.

The interpretation contended for by the plaintiff
would appear to have merit if the defendant's reply
to the plaintiff's letter of May 2, 1950 were to be con-
sidered an unqualified acceptance of his offer. The
terms of the offer specified that the bonds were to be
held ". . . as your Indemnity against any liability for
payment of interest or penalty alleged to be due. . .".
The proper construction of a contract, however, does
not depend upon any name given it by the parties, or
upon any one provision, but upon the entire body of
the contract and its legal effect as a whole: *Capozzoli,
Admx. v. Stone & Webster Engineering Corporation,*
352 Pa. 183, 42 A. 2d 524; *Smith-Faris Company v.
Jameson Memorial Hospital Association et al.,* 313 Pa.

254, 260, 169 A. 233. When the entire correspondence is examined it is evident that instead of accepting the terms set forth in plaintiff's offer the defendant introduced a new and different term as part of the proposed contract. Defendant's letter indicates that it would not accede to a contract of indemnity only but affixed a condition to its acceptance not embodied in the original offer, namely, that *the interest and penalties be paid or otherwise stricken from the tax books by December 31, 1950.* The language employed clearly evidences that the defendant was interested in having the taxes settled irrespective of whether they amounted to legally enforceable claims. Despite this clear and unambiguous expression of intention, plaintiff argues nevertheless that the words must be taken to refer to liens because the parties were only interested in having the liens satisfied. If these terms admit of any ambiguity, the circumstances leading up to the transaction tend to substantiate a different conclusion.

Unquestionably defendant would have been liable on its policy of insurance if the delinquent interest and penalties on the city taxes remained valid liens against the property. Plaintiff has consistently maintained that after the city tax liens were marked satisfied in the Prothonotary's office, defendant's insured acquired the property free of such claims and as a result defendant, as title insurer, was under no obligation with respect thereto. The fallacy of this argument is plaintiff's assumption that the validity of liens is determined solely by the records in the Prothonotary's office. In *Philadelphia v. H. R. Anderson et al.,* 142 Pa. 357, 21 A. 976, this Court said at p. 368, referring to the books and records of the Receiver of Taxes, ". . . When taxes were made a lien on the real estate on which they were levied in the city of Philadelphia, it was necessary to provide some record of the liens un-

paid at the end of the current year. For this purpose a book was provided, upon which unpaid taxes were to be entered. Taxes not appearing there were presumed to be paid, and they were not liens. *Taxes appearing there were valid liens upon the real estate on which they were assessed. This book was thus made the lien docket of the city. It was the proper and the only reliable source of information open to the interested inquirer. . . .*". (Emphasis supplied). In the instant case the Receiver of Taxes reopened the City's books and records in April or May, 1948, prior to the settlement in question, and placed the delinquent interest and penalties in the active binder. Under these circumstances if liability for the city tax claims was sought to be imposed on the defendant, it could not assert as a defense that the liens were satisfied of record. Confronted with possible liability because of the uncertain status of the city tax liens, defendant's underlying purpose in insisting that all interest and penalties on both city and school taxes be paid and stricken from the tax books is obvious. This additional condition afforded the defendant absolute protection against the risk of litigation, a risk that was more real than apparent, at least with respect to the city taxes. By the insertion of these terms, plaintiff's offer limited to indemnity was rejected and a counter-offer was proposed. "A reply to an offer, though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance but is a counter-offer.": Restatement, Contracts, §60.

Plaintiff's next contention that even if the defendant's reply be considered a counter-offer there was no acceptance of it by the plaintiff, is equally untenable. Although the word "accept" does not expressly appear in the plaintiff's reply, the language contained therein when read in conjunction with the counter-offer can

only signify an assent to its terms. After acknowledging the counter-offer, plaintiff states further, "I want to assure you of my appreciation for your cooperation in this matter.". The mere fact that plaintiff also suggested to the defendant that it would not be necessary to take any action if the liens were not cleared up by December 31, 1950 in no way qualified his acceptance. An unconditional acceptance containing a request or suggestion does not amount to a rejection unless the acceptance is made to depend on an assent to the additional terms: See Restatement, Contracts, §62. Plaintiff's conduct subsequent to the correspondence is a further factor decisive of acceptance for his acts were clearly consistent with acceptance and not with rejection. Acceptance may be manifested by conduct as well as by words: *Gum, Incorporated v. Felton et al.,* 341 Pa. 96, 102, 17 A. 2d 386. Plaintiff alleged in his complaint that he was not informed that the bonds had been sold until on or about July 16, 1953, more than three years after the correspondence in question. His failure to take any action or make any inquiry respecting the bonds during this period, when he pledged them as security for what he claimed to be non-existent obligations, warrants the inference of assent.

By his acceptance plaintiff agreed to accomplish a particular result by a specified date. When plaintiff failed to pay the delinquent interest and penalties by December 31, 1950, defendant's right to sell the bonds and make payment accrued immediately. Where the agreement is to do a particular thing, a right of action is complete as soon as there is a failure to perform: See *McSorley v. Coyle,* 40 Pa. Superior Ct. 560, 565.

Judgment affirmed.