## Pappas *v.* Lucas, Appellant.

Argued March 20, 1956. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (RHODES, P. J., absent).

*Charles S. Schermer,* with him *Sol R. Gitman,* for appellants.

*Joseph A. Hagerty,* with him *Hagerty & McCarthy,* for appellee.

OPINION BY HIRT, J., July 17, 1956:

George N. Pappas, on April 14, 1954, entered into an agreement in writing with the defendants for the purchase of their restaurant business known as Rockledge Tavern. The writing was denominated "Temporary Agreement" by the parties. The purchase price named in it was $33,000. On execution of the agreement by the plaintiff and the defendants, Pappas, as "deposit" money, delivered $1,000 to the real estate dealer who had negotiated the sale; he turned the whole of this sum over to the defendants who have since retained it. George N. Pappas died on April 28, 1954. Thereafter the present plaintiff, the administrator of the decedent's estate, notified the defendants that he would not proceed with the purchase of the restaurant and he demanded the return of the $1,000 hand money, paid as a deposit on the purchase price. On defendants' refusal to comply with the demand this suit was brought. In addition to denying plaintiff's right to a return of the above sum in their answer, the defendants filed a counterclaim for the amount of their alleged loss on a subsequent sale of the restaurant for a sum less than $33,000. We have set forth the writing in full in the margin;[1] the empha-

---

[1] TEMPORARY AGREEMENT

"This temporary agreement made this 14th day of April, A.D. 1954, by and between Michael and Anne Lucas, co-owners of the Rockledge Tavern, situate #7 Huntingdon Pike, Rockledge, Penna.

WHEREAS, Michael and Anne Lucas are the owners of the res-

sis is ours.  The lower court in construing the writing held in effect that as a "Temporary Agreement" the

taurant and tavern known as Rockledge Tavern, situate as described above, and the restaurant liquor license and fixtures, equipment contained therein and,

WHEREAS, George Pappas of                is interested in purchasing same for the sum of $33,000.00, said Buyer hereby tenders $1,000.00, representing a deposit money for the restaurant described above, together with the liquor license and fixtures, equipment, etc. contained therein,

WHEREAS, Michael and Anne Lucas are the Lessees of said premises under a certain lease arrangement between them and the owner, Frank Birkenhier of 600 Solly Avenue, Philadelphia, Pa., and said lease is for a term of five (5) years at a total rental of $200.00 per month and certifies a certain assignment clause;

NOW, THEREFORE, *in consideration of the mutual promises and agreements herein contained, the said parties hereto agree to be mutually bound as follows*:

The Sellers referred to above hereby agree to execute all the necessary papers in connection with the transfer of said existing license to the Pennsylvania Liquor Control Board and further agree to sign a bill of sale in the sum of $33,000.00 for the fixtures, equipment and liquor license and further agree to execute and assign over unto said George Pappas existing lease described above.

In event Micahel and Anne Lucas elect, under the terms of said lease, which expires on or about June 1, 1954, to purchase the real estate, which contains said restaurant and tavern, known as The Rockledge Tavern, they then agree to give to the purchaser of this busines a lease in the term of five years with the same assignable clause and same purchase option which were contained in the original lease, expiring on or about June 1, 1954. Said purchase price shall be $22,000 and said monthly rental shall not exceed $200 per month.

It is understood and agreed and made a part of this temporary agreement, that unless the agreements contained herein are carried out by all parties *concerned*, the deposit in the sum of $1,000.00 shall be returned to the purchaser and all papers in connection with this temporary arrangement shall become null and void."

(Signed)  Michael Lucas

Anne Lucas

George Pappas

writing was merely a part of the negotiations looking toward an enforceable contract, but nothing more. Consistent with that view the court held that the plaintiff had avoided legal liability under the agreement by merely indicating that he would not proceed with the purchase of the restaurant. Accordingly the lower court sustained preliminary objections which had been filed by the plaintiff, in the nature of demurrer to the defendants' counterclaim, and on motion entered judgment on the pleadings in favor of the plaintiff and against the defendants in the above amount.

The fact that the writing was named "Temporary Agreement" by the parties is not decisive of the question involved. The proper construction of a contract does not depend upon the name given it by the parties nor upon any one provision but upon the body of the contract in its entirety and its legal effect as a whole. *Selig v. Phila. Title Ins. Co.,* 380 Pa. 264, 111 A. 2d 147; *Smith-Faris Co. v. Hospital Assn. et al.,* 313 Pa. 254, 169 A. 233. In construing a contract the court "will . . . look to its purpose, rather than to the name given it by the parties": *Capozzoli v. Stone & Webster Eng. Co.,* 352 Pa. 183, 42 A. 2d 524.

The name "Temporary Agreement" in this instance was not wholly inappropriate. The consummation of the sale was dependent upon two contingencies beyond the absolute control of the parties, to-wit: the transfer of the liquor license to the purchaser by the Liquor Control Board and the landlord's consent to an assignment of the defendants' interest in the lease of the premises. In our view the lower court misconstrued the provision in the writing "That unless the agreements contained herein are carried out by *all parties concerned,* the deposit in the sum of $1000 shall be returned." The court's interpretation in effect rewrites

the agreement by substituting the phrase "all parties *hereto*" for "all parties concerned" as the language appears in the writing. Quite obviously we think, the landlord and the Liquor Control Board were the "parties concerned" in the performance of the contract which the purchaser and the sellers had in mind. The refusal of either of them (to assign the lease or to transfer the license) would have made it impossible for the defendants to deliver what they had agreed to sell, and would have entitled the plaintiff to a return of the hand payment. But the plaintiff, a party to the writing, could not avoid the obligation of his contract by the simple expedient of refusing to carry out his undertaking. Any other construction of the contract cannot explain the fact that plaintiff's decedent did make a hand payment of $1,000 to apply on the purchase price, especially in the light of the provision of the contract that "in consideration of the mutual promises and agreements herein contained, the said parties hereto agree to be mutually bound . . ."

Death did not terminate this contract (Cf. *Young, Admrx. v. Gongaware,* 275 Pa. 285, 119 A. 271) and the fact that no specific time for performance is set forth in the writing, is immaterial. The law implied performance within a reasonable time. *Schlechter v. Foltz,* 179 Pa. Superior Ct. 119, 115 A. 2d 910.

Judgment reversed, with a procedendo.