## Scooper Dooper Ice Cream Shops, Inc. v. Providence Developers, Inc.

*John C. Smith*, for plaintiff.

*Rodger L. Mutzel*, for defendant.

DEFURIA, J., July 17, 1968.—Plaintiff is the lessee of one store of a small, typical "shopping center" complex in Upper Darby, Delaware County. The use provision of the lease of August 31, 1967, permits plaintiff to operate a *restaurant* on the premises. Plaintiff's lease with defendant contains a restriction against competition. Such restrictions against trade are usual and common, since a shopping center needs diversity of types of business to attract customers and exclusiveness to prevent undue competition. A shopping center is a microcosm of the commercial world, and tries to offer diversified products and services. The shopping center can attract only a certain volume of business depending on the number and nature of the stores in the complex. Such arrangements are beneficial to both the lessor and the lessees.

On March 25, 1968, defendant leased a store in the center to J. Lynn, Inc. Essentially, the use provision of this lease permitted Lynn to operate a *delicatessen*. Plaintiff contends that this lease and the operation of the Lynn store would violate the terms of plaintiff's lease, and deprive it of the protection it sought, bargained for and purchased from defendant. Plaintiff, therefore, filed its complaint in equity, seeking to enjoin defendant from violating the restrictive covenant.

From the testimony taken and the briefs filed, two issues must be resolved.

First, what are the terms of the restrictive covenant in favor of plaintiff? Ordinarily, in written leases, this would be simple to answer. What does the lease provide? However, here, after negotiations, defendant prepared a form of lease, sent it to plaintiff, who made changes and additions, initialled and executed the lease and mailed it back to defendant. Defendant added a sentence to one of the paragraphs, initialled and executed the lease and mailed it back to plaintiff. The first question, then, is—is the added sentence a part of the lease? Defendant says, yes; plaintiff contra.

The second issue is the meaning of a term or terms of the lease, since we are dealing with a form of trade term, e. g., the meaning of the term "delicatessen".

From the evidence we make the following

### FINDINGS OF FACT

1. Plaintiff, Scooper Dooper Ice Cream Shops, Inc., is a New Jersey Corporation duly registered and authorized to do business as a foreign corporation in the State of Pennsylvania.

2. Defendant, Providence Developers, Inc., is a Pennsylvania Corporation, with its principal place of business located at 201 North Olive Street, Media, Delaware County, Pa.

3. At all times hereinafter set forth, defendant, Providence Developers, Inc., was the owner of the Providence Shopping Center (hereinafter referred to as "the shopping center"), and the land upon which it was located in Upper Darby Township, Delaware County, Pa.

4. By lease dated August 31, 1967, defendant did lease to plaintiff:

ALL THAT CERTAIN one story building having a frontage of 20 feet, measured by a depth of 100 feet and containing a gross area of 2000 square feet being

store #6, as shown on a certain plan of Providence Shopping Center prepared by G. D. Houtman & Son, C. E., located in the Township of Upper Darby, County of Delaware and State of Pennsylvania.

5. The purpose of the lease provided that the building was to be used and occupied as a retail restaurant and ice cream shop, featuring the sale of various soft and hard ice creams, confectionery items and luncheon and dinner items and for no other purposes.

6. The lease further provided that the plaintiff was to have the sole and exclusive right to operate an ice cream shop in the shopping center, and such exclusive right shall also pertain to the operation of a restaurant, provided, however, that such exclusive restaurant shall not apply nor limit any lease commitments which may have already been entered into by tenants presently occupying space in the shopping center.

7. The said lease provided in paragraph 41 of the rider that the lessor agreed not to permit the operation of a second ice cream shop and restaurant as such to be established in the shopping center.

8. Defendant, on March 25, 1968, leased premises being known as "store No. 10" to J. Lynn, Inc., a Pennsylvania corporation, to be used and occupied as a "delicatessen, featuring the sale of cold cuts and related food specialties, including salads, breads, etc., with the privilege of selling light lunch items, including sandwiches, soups, beverages and Italian foods for consumption both on and off the premises". The lessee, J. Lynn, Inc., was also permitted to sell beer for consumption on and off the premises, provided the required license was obtained.

9. The lease between the parties hereto, as aforesaid described, provided at paragraph 41 thereof that the restrictions placed on the defendant shall not "apply to a delicatessen store featuring sandwich sales".

### Discussion

In the negotiations between plaintiff and defendant, it is clear that plaintiff wanted the exclusive right to operate a full-fledged restaurant, and it was given such a right by the terms of its lease of August 31, 1967. The use provision permitted lessee to operate a "retail restaurant . . . featuring the sale of various . . . luncheon and dinner items." (Paragraph 2 of Lease). Paragraph 41 of the lease, restrictions, gave lessee the "sole and exclusive right to operate" a restaurant (subject to any already existing leases). Further, "lessor agrees not to permit the operation of a second . . . restaurant" in the center. But then follows the controversial sentence added by lessor: "This restriction shall not apply to a delicatessen store featuring sandwich sales."

The lease, with the added sentence, was mailed to plaintiff on or about August 31, 1967. Plaintiff entered into possession and began operation of its business, and never objected to the added terms until it filed this complaint in equity, six months later. The added provision is a part of the lease and of the final and complete meeting of the minds of the parties for several reasons.

If, as plaintiff contends, it did not agree to or know about the added provision, then there was no meeting of the minds at all, and no lease or agreement exists between the parties. Such a conclusion would be against all rules of construction of written attempts to agree, and also would defeat plaintiff's claim, since it then would have no enforceable contract at all.

Next, it is elementary, the counter-offer follows offer, and, until the minds meet on all points, there is no contract. When plaintiff changed, modified and added to defendant's lease, this was a mere counter-offer. The fact that plaintiff had executed the lease would not change the effect. When defendant added

a provision to plaintiff's counter-offer, this, in turn, was a counter-offer, and defendant's execution of the amended lease would not change the result: Selig v. Philadelphia Title Insurance Company, 380 Pa. 264; Vitro Manufacturing Co., v. Standard Chemical Co., 291 Pa. 85. But, plaintiff retained the lease; did not object or complain for six months; entered into possession and began business. Is not this an acceptance? We believe it is an acceptance by action (or inaction). See Carnegie Nat. Gas Co. v. Philadelphia Co. 158 Pa. 317; Jennings v. McComb, 112 Pa. 518, holding that a party who acts under a contract is bound by the terms thereof, even though he did not execute the contract.

There are two other compelling reasons for holding that the added terms are a part of the lease. First, there is the question of credibility. Plaintiff testified that when he received the amended lease, he *assumed* it had not been further amended, did *not* look at it, and proceeded on the assumption that its terms were as it had dictated. A good business man does not so act; especially when he consults his attorney, makes his changes, and sends off his version of the contract first. Defendant's agent claimed that he telephoned the plaintiff, discussed plaintiff's changes, and told plaintiff of the change defendant wanted and was inserting in the lease. This latter version, not seriously rebutted, accords with ordinary business practice. The president of the plaintiff is an intelligent, experienced business man, and the court cannot accept his version of the concluding transaction.

Lastly, in effect, plaintiff desires to reform a writing. Since it presented only one witness, and no other evidence whatsoever on the issue, it has failed to meet its burden of proof. The law of this Commonwealth requires a party seeking to reform or overthrow a written instrument to produce the testimony of two

witnesses, or of one witness corroborated by circumstances equivalent to the testimony of a second witness. See 8 P. L. Encyc. 146, 171, and the Act of May 28, 1913, P. L. 358, sec. 1, 12 PS §1222.

Thus, we are now confronted with the interpretation of contract terms which grant an exclusive restriction to operate a "restaurant", and at the same time, delimit the restriction by permitting or excepting a "delicatessen store featuring sandwich sales".

Defendant admits it has leased a store to J. Lynn, Inc., for the operation of a "delicatessen, featuring the sale of cold cuts and related food specialties, including salads, breads, etc., with the privilege of selling light lunch items, including sandwiches, soups, beverages and Italian foods for consumption both on and off the premises". The operator of J. Lynn, Inc., not yet in possession or operation, frankly testified that the operation contemplated the retail sale of the usual delicatessen items and foods at retail for consumption off the premises, and, also, the preparation and service of those foods on the premises. There would be a kitchen, waitresses, and breakfast, lunch and dinner menus. Is such activity within the prohibition of plaintiff's lease?

Parenthetically, we must state that we are not concerned here with the interpretation of Lynn's lease, nor with Lynn's present or future activities. These issues are not now before us. The sole issue is the interpretation of the plaintiff's lease, and the rights and duties flowing therefrom.

If defendant permits the operation of a second restaurant in the shopping center, it should be restrained because plaintiff bargained for, paid for and received the exclusive right to operate a restaurant. But, by the terms of the lease, plaintiff cannot object to a "delicatessen store featuring sandwich sales". We will not deal with the problem of anticipatory breach,

nor how any decree of this court can affect J. Lynn, Inc., which is not a party, but assume that rights are fixed by the entry of defendant into a lease with Lynn for the operation of a delicatessen. This being so, has defendant violated the terms of the lease, and, if so, to what extent should the defendant be restrained?

Since the parties themselves acknowledged a distinction between a restaurant and a delicatessen, and obviously made some attempt to limit the operation of the latter, the problem is to determine how far a delicatessen can duplicate the operation of a restaurant and still not violate the restrictive covenant. Obviously, if a delicatessen can duplicate all of the services and foods of a restaurant, the parties' attempts to make a distinction between restaurant and delicatessen failed, and plaintiff obtained a worthless restriction.

A restaurant is an eating place where food is delivered to and prepared in one section of the restaurant (the kitchen) and served to the diner in another section (the dining room area). The food is prepared by specialized employes (cooks) and served by other employes (waiters). The patron does not see or select the raw or unprepared food, but makes his selection from a menu. The food is consumed on the premises.

Experts testified to the nature of the operation of a delicatessen. Many similarities to a restaurant will be noted. It, too, is an eating place, since food may be consumed on the premises as well as off the premises. It, too, "prepares" food from its raw state, and sometimes this is done in a separate room or kitchen by employes separate from the servers. It, too, often has a menu for selection. What then are the essential differences?

First, a delicatessen displays in the raw or prepared state specialities or "delicatessen foods". These items differ greatly from restaurant fare. Steaks, chops,

roasts and the like are out. Caviar, cheeses, cold cuts, breads, and the like are in. Tuna fish in cans is an illustration of "raw" food. In a salad, the tuna has been "prepared". Cheeses and spreads are similarly in the raw or prepared. Second, these displayed items may be consumed on the premises or taken out for consumption elsewhere. See Seibovitz v. Hamburg, 16 D. & C. 141. Third, only the items on display and for retail "take-home" sale are available for preparation and consumption on the premises. Therefore, a delicatessen, unlike a restaurant, sells *specialty* foods for consumption on or off the premises, but all of the food is *on display* and may be purchased to take out. In addition to the different nature of the foods, no food is delivered directly to the kitchen of a delicatessen and prepared there, unseen by the patron.

Plaintiff's president admitted that he did not know of any delicatessen in Delaware County which did not sell food for consumption both on and off the premises, although in other places "pure" (sales only for consumption off premises) delicatessens still existed. Which leads to the comment that it is in the nature of any business to expand its area of operation. Plaintiff, originally a "pure" ice cream vendor, expanded into the restaurant business. Likewise the "pure" delicatessen has grown to resemble a specialty restaurant. Plaintiff seeks to prohibit a delicatessen serving food on the premises, from menus, and served by waiters. He would not object to a "pure" delicatessen.

Under the terms of the lease, defendant may permit the operation of a delicatessen, and it is clear that such a business sells food for consumption both on and off the premises. Further, such businesses have separate preparation areas or kitchens, use menus and servers. The addition of the words in this lease "featuring sandwich sales" apparently does not limit the delicatessen operation because that is just what a delicatessen features.

What judgment can the court make here? The J. Lynn, Inc., the delicatessen, is not yet in operation. Plaintiff asks that defendant "be restrained from entering into any lease inconsistent with the provisions" of plaintiff's lease. But plaintiff brought his action on April 1, 1968, and the Lynn lease was already entered into on March 25, 1968. Therefore, under plaintiff's general prayer for relief the court can only prohibit the defendant from any future action which would violate the restrictive covenant. The only such actions foreseeable would be to permit the delivery and preparation of foods in the delicatessen directly to and in its kitchen, without exhibition of such foods in the retail portion of the store for consumption off the premises. It is apparent that there is no justiciable controversy before the court, and that it was asked for an advisory opinion. Until and unless defendant violates the restrictive covenant as herein interpreted, and plaintiff brings an action for relief, this court cannot act.

From the findings of fact, we reach the following

### CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and the subject matter.

2. The lease dated August 31, 1967, between plaintiff and defendant is a valid and subsisting agreement, and plaintiff has not met the burden of proof to reform such agreement.

3. Plaintiff has a valid restrictive covenant giving it the exclusive right to operate a restaurant in the shopping center.

4. This exclusive right is specifically limited by the exception of a delicatessen, which may do business in the same shopping center.

5. The delicatessen may display, serve and sell from a menu specialty foods for consumption both on and off the premises.

6. The exclusive right and the exception thereto, while permitting a delicatessen, would not permit the sale for consumption on the premises of foods not on display and for sale at retail for consumption off the premises.

7. Since defendant has merely signed a lease with a third party, who is not yet in operation of the proposed delicatessen business, the court does not have before it a justiciable controversy.

Wherefore, the court enters the following

### DECREE NISI

Now, July 17, 1968, plaintiff's complaint in equity is dismissed.

Each party to pay its own costs.

This order shall be entered by the prothonotary as an order nisi, and the prothonotary shall give notice immediately to the parties or their attorneys of record of the filing of the decree nisi; if no exceptions are filed hereto within 20 days after service of such notice, the prothonotary shall enter, upon praecipe, said decree nisi as the final order of the court.